## CONLON v. DEAN

1. WITNESSES—CREDIBILITY—IMPEACHMENT—INCONSISTENT STATEMENTS.

   Witness' credibility may be impeached by showing he made a statement before trial inconsistent with his testimony at trial.

2. ATTORNEY AND CLIENT—WITNESSES—IMPEACHMENT—PRIVILEGED COMMUNICATIONS.

   Statement given by defendant in a civil suit to assistant prosecuting attorney, under questioning to determine possibility of criminal prosecution of the defendant in connection with an automobile-bicycle accident, *held*, not privileged because assistant prosecutor was not acting as defendant's private counsel.

3. WITNESSES—PRIVILEGED COMMUNICATIONS—INFORMER—IMPEACHMENT.

   Statement of person faced with possible criminal prosecution to assistant prosecuting attorney regarding observations of the event in which she was a participant does not make her an informer so as to make her statement privileged in a civil action against her arising out of the event.

4. SAME—IMPEACHMENT—PRIVILEGED COMMUNICATIONS—PUBLIC INTEREST.

   No compelling public interest requires the extension of attorney and client privilege to statement by person faced with pos-

REFERENCE FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 767.
[2–4] 58 Am Jur, Witnesses §§ 464, 465, 468, 471.
[5] 53 Am Jur, Trial §§ 99, 100.
[6] 4 Am Jur 2d, Appeal and Error §§ 397–399, 404, 416.

sible criminal prosecution to prosecuting attorney, so as to bar their use in civil action against the person who made the statement based upon the subject event.

5. TRIAL—OFFER OF PROOF—COURT RULE.

Purpose of court rule requiring that offer of proof be made after adverse ruling on admissibility of evidence at trial is to provide the trial judge with the information he needs to rule intelligently and the appellate court with the information it needs to pass on an allegation that he ruled erroneously; where that purpose has been fulfilled it is not necessary to determine the sufficiency of the offer of proof (GCR 1963, 604).

6. APPEAL AND ERROR—OFFER OF PROOF OF DOCUMENT—RECORD ON APPEAL.

Transcript of statement made by defendant before trial, although not entered on the record when offer of proof was made by plaintiff was proper for appellate court's consideration where the plaintiff clearly identified the transcript and its authenticity was not in dispute.

Appeal from Macomb, Gallagher (Edward J.), J. Submitted Division 2 January 11, 1968, at Detroit. (Docket No. 2,437.) Decided November 29, 1968. Leave to appeal denied February 18, 1969. 381 Mich 802.

Complaint by Bernadette J. Conlon, a minor, by her next friend, Bernice H. Conlon, and Henry J. Conlon against Pauline M. Dean and Raymond J. Dean for personal injuries and consequential damages sustained when an automobile driven by Pauline Dean struck Bernadette Conlon. Judgment for defendants. Plaintiffs appeal. Reversed and remanded for new trial.

*Sanborn & Liedell,* for plaintiffs.

*Eggenberger & Eggenberger,* for defendants.

LEVIN, J. The plaintiff appeals a jury verdict of no cause of action assigning as error the trial judge's

refusal to allow impeachment of the defendant driver, Mrs. Pauline M. Dean, by means of a statement she gave an assistant prosecuting attorney the day her automobile struck the plaintiff Bernadette J. Conlon. The trial judge ruled the statement was privileged, adding: "The prosecutor was in fact counsel for Mrs. Dean." We reverse. The statement was not privileged. The error was not harmless. The contents of the statement might have been regarded by the jury, had the jury been permitted to learn the contents, as bearing adversely on Mrs. Dean's credibility.

Bernadette, aged 15 at the time, was struck by Mrs. Dean's automobile as Bernadette was attempting to cross 5-lane Groesbeck Highway while riding or walking beside her bicycle from west to east. Groesbeck has 2 through lanes north, 2 south and a center lane for left-hand turns. Mrs. Dean was traveling south in the lane adjoining the center lane. A heavy truck was proceeding south in the lane to her right.

Bernadette claims she had walked the bike to and was within the center lane and had stopped to let northbound traffic pass before she was struck; an eyewitness corroborated that testimony in part. Mrs. Dean and the truck driver testified that Bernadette emerged from woods adjoining the highway and drove her bicycle onto the highway across their line of travel and was still in motion at impact, which occurred momentarily after her bicycle entered the center lane and while it was still partially in the adjoining lane in which Mrs. Dean was traveling.

Bernadette did not recall the accident itself or having seen Mrs. Dean's car before the accident. The other witnesses corroborated Mrs. Dean's testimony that she applied her brakes before impact, steering left as she did so, and that after her car

struck Bernadette it continued to the left across northbound Groesbeck, landing in a ditch.

The 2 eyewitnesses and Mrs. Dean also were in agreement that Mrs. Dean had just passed the truck shortly before impact. The truck driver stated that Mrs. Dean had proceeded some 600 feet ahead of him before the accident. Both Mrs. Dean and the truck driver said they first saw Bernadette about the time Mrs. Dean passed the truck. Mrs. Dean said this was just 150 feet from impact.

Mrs. Dean also testified there was no other traffic in front of her and she had not returned to the lane occupied by the truck after she passed it.

The statement, excluded on the ground it was privileged, was taken down stenographically within a few hours of the accident. Mrs. Dean responded to questions put to her by an assistant prosecuting attorney. She stated she did not see Bernadette on the shoulder of the road and did not know where she came from, that she first saw Bernadette "when she [Bernadette] started to turn just in front of me." Mrs. Dean also stated she, Mrs. Dean, had entered the lane in which she was traveling at the time of the accident to pass an automobile ahead of her, which automobile she did not think obstructed her vision of Bernadette, but it may have. The other vehicle was 100 yards or perhaps less ahead of her. Mrs. Dean noticed Bernadette for the first time in Mrs. Dean's lane of travel some 10 or 25 feet ahead of her, she really didn't know. Mrs. Dean had not seen Bernadette other than when she was in Mrs. Dean's lane, directly in front of her. There was a truck coming close behind so instead of turning right to avoid Bernadette, and since nothing was coming from the south, Mrs. Dean "speeded up and when she [Bernadette] looked around and she saw me and for some reason she kept coming right the same

way I was. Probably as panicky as I was. I tried, I was stepping on the brakes and tried to avoid her but I could not." Mrs. Dean stated she increased her speed to get around Bernadette and applied her brakes; she didn't recall whether she applied her brakes or sped up first. She had passed the truck 3 or 4 minutes before the accident and had gone back into the right-hand land in front of the truck prior to the accident. She returned to the lane in which she was traveling at the time of the accident when she noticed the car out in front of her so that she could pass that car. The impact occurred in the center of the turning lane.

It is apparent that Mrs. Dean's statement differed materially from her testimony at the time of trial. It is well established that a witness's credibility may be impeached by showing he made a statement prior to trial inconsistent with his testimony at the time of trial.[1]

Mrs. Dean's statement to the assistant prosecuting attorney was not privileged. While he was an attorney, when he questioned her he was acting in his official role as prosecutor for the people, and could in no sense be said to have been Mrs. Dean's private counsel.[2] The interview transcript shows that Mrs. Dean understood this and, thus, no attorney-client privilege can be claimed by her.

While there is a privilege which protects the identity of an informer,[3] Mrs. Dean was not an in-

---

[1] *Hill* v. *Harbor Steel & Supply Corp.* (1965), 374 Mich 194; *Kalamazoo Yellow Cab Co.* v. *Kalamazoo Circuit Judge* (1961), 363 Mich 384; McCormick on Evidence, § 33, *et seq.*, p 62, *et seq.* See, also, *Ruhala* v. *Roby* (1967), 379 Mich 102.

[2] *People* v. *Davis* (1884), 52 Mich 569, 572; *Granger* v. *Warrington* (1846), 8 Ill 299, 309.

[3] *People* v. *Laird* (1894), 102 Mich 135; *People* v. *Asta* (1953), 337 Mich 590; 8 Wigmore, Evidence, McNaughton Rev (1961), § 2374. The privilege applies only to the identity of the informer, and not to his communication except insofar as disclosure of the communication would disclose the identity of the informer. Wigmore, *supra,* § 2374, p 765.

former. She was a potential defendant who voluntarily stated her observations of the event in which she had just participated. As such, she has no personal claim of privilege to prevent the use of her statement in a civil case.

There is likewise no basis for defendants' contention that the people have an interest which makes the statement privileged, a privilege which the defendants in this case may assert. The case of *Lewis v. Roux Trucking Corp.* (1927), 222 App Div 204 (226 NY Supp 70), relied upon by the defendants, exemplifies a group of cases which proclaim generally that in order to protect the public interest all communications to prosecuting attorneys are privileged.[4] Some of these cases are analyzed in *State v. Archer* (1927), 32 NM 319 (255 P 396, 402).

The opinion of the New Mexico Supreme Court in the last cited case shows that in general there are

---

"Even where the privilege is strictly applicable, the trial court may compel disclosure if it appears necessary in order to avoid the risk of false testimony or in order to secure usable testimony." 8 Wigmore, Evidence, McNaughton Rev (1961), § 2374, p 768.

See, also, *McCray v. Illinois* (1967), 386 US 300 (87 S Ct 1056, 18 L Ed 2d 62), and *Roviaro v. United States* (1957), 353 US 53 (77 S Ct 623, 1 L Ed 2d 639).

[4] See, *e.g.*, *Vogel v. Gruaz* (1884), 110 US 311 (4 S Ct 12, 28 L Ed 158); *Worthington v. Scribner* (1872), 109 Mass 487 (12 Am Rep 736); *Michael v. Matson* (1909), 81 Kan 360 (105 p 537). Contrast: *Granger v. Warringer, supra.* All these cases concern slander or malicious prosecution actions against informants based on their statements to prosecutors. *State v. Archer* (1927), 32 NM 319 (255 P 396, 402).

It has been said: "A communication from a complainant seeking redress, made with knowledge of the status of the prosecutor, is not protected by the attorney-client privilege. The prosecutor's official responsibility disables him in that case from giving advice as a retained partisan attorney. When the complaint is filed, the identity of the complainant becomes a matter of public record and the informer privilege does not apply." 8 Wigmore, Evidence, McNaughton Rev (1961), § 2375, p 776.

The authors of 58 Am Jur, Witnesses, § 471, state that communications to a prosecuting attorney for the purpose of originating or forwarding a judicial proceeding for bringing an offender to justice are generally regarded as privileged and inadmissible in evidence, but that the privilege does not extend to admissions by an accused so as to prevent their proof in a criminal prosecution.

two kinds of information which the public has an
interest in protecting against disclosure, and which
are, therefore, privileged.   One is a "State secret",
which is almost never involved in these cases, and
is certainly not present in the instant case.[5]   The
other is the identity of an informer; the informer
privilege is based on the need to encourage citizens
to come forward with information concerning of-
fenses, without fear of exposure or retaliation.   The
blanket privilege laid down in such cases as *Lewis*
v. *Roux Trucking Corp., supra,* is simply a kind of
verbal overkill growing from imprecise analysis,
which fortunately has not been perpetuated in later
cases.[6]

Our research discloses no report of a case holding
the declarant enjoys a privilege which allows him to
prevent disclosure of his statement in proceedings
to which he is a party except for those cases where
the declarant has been sued for malicious prosecu-
tion (see footnote 4) where a policy similar to that
which operates to protect an informer's identity has
been thought by some courts to be involved.

The early Michigan case of *People* v. *Davis*
(1884), 52 Mich 569, states the principle applicable
in this case.   In a prosecution for adultery, the de-
fense sought to impeach the complaining witness
by showing that his original statement to the prose-

[5] The American Law Institute Model Code of Evidence and the
Uniform Rules of Evidence Act promulgated by the Commissioners
on Uniform State Laws state that in addition to the privilege for state
secrets (Model rule 227, Uniform rule 33), official information, de-
fined as information not publicly disclosed relating to internal affairs
of the State, is also privileged (Model rule 228, Uniform rule 34).

[6] The court in *Application of Heller* (1945), 184 Misc 75 (53 NYS
2d 86), noted that *Lewis* v. *Roux Trucking Corp., supra,* rested on the
public policy consideration that informers should not be discouraged
from offering information to law-enforcement officers, but found that
consideration inapplicable in the case then presented and issued a
subpoena to be served upon a district attorney in spite of the absolute
language laid down in the earlier case.

cutor directly contradicted his testimony at the trial, but the trial judge excluded the statement as privileged. The Michigan Supreme Court reversed, observing that the complainant had no privilege to assert, since the prosecutor was not acting as his attorney, and that the People had no reason, on the facts of that case, to suppress the statement. Rather, the public interest in doing justice required that the statement, which threw important light on the credibility of the principal witness, should be admitted in evidence. In accord on similar facts, see *Riggins* v. *State* (1915), 125 Md 165 (93 A 437, Ann Cas 1916E, 1117). We find without merit the attempt to distinguish *Davis* on the ground that it was a criminal case and this is a civil case.

Mrs. Dean made her statement knowing it would be considered by the prosecutor when he decided whether to lodge a criminal charge against her. This certainly was a more powerful deterrent to her giving such a statement than would have been any knowledge on her part of a rule of law allowing use of the statement to impeach her testimony should she testify in a civil suit which might possibly be started against her. It would be irrational and unjust to preclude use of a statement given in such circumstances on the ground that a rule of exclusion would encourage fuller disclosure to the prosecutor—irrational because a rule of admissibility is not likely to deter anyone who otherwise would speak, and unjust because it deprives aggrieved persons of evidence of importance to their cases.

Professor McCormick has observed that "the development of judge-made privileges halted a century ago" and suggests that privileges should be narrowly construed rather than enlarged since their

tendency is to exclude otherwise useful evidence. McCormick on Evidence, § 81.

The reluctance to expand the area of privileged information is reflected in our Supreme Court's decision in *Perin* v. *Peuler* (1964), 373 Mich 531, where the Court declared that one's motor vehicle conviction record is admissible evidence despite a statute saying just the opposite. The tendency to limit the area of privilege appears also in the Court's construction of the statutory provisions prohibiting use in court of accident reports required to be made for statistical purposes. CL 1948, §§ 257.622, 257.624 (Stat Ann 1960 Rev §§ 9.2322, 9.2324).[7] We are guided accordingly in this case where no statute applies. Only in the protection of a compelling public interest should the area of privilege be judicially extended. No such interest appears in this case.

The statement given by Mrs. Dean to the prosecuting attorney was not a "report" required to be made pursuant to Chapter 6 of the Michigan Vehicle Code (PA 1949, No 300), and, thus, is not protected from use in a court action by the provisions of CL 1948, §§ 257.622, 257.624 (Stat Ann 1960 Rev §§ 9.2322, 9.2324).[8]

---

[7] In *Wallace* v. *Skrzycki* (1953), 338 Mich 164, 177, the Court declared:

" * * * we have adhered to the position that the statute in question does not bar a police officer from testifying concerning physical facts observed by him or admissions made to him by drivers of vehicles at the scene of an accident and that police reports of accidents are not barred by the statute for use as evidence or refreshing a witness's recollection."

Similarly, see *Duncan* v. *Strating* (1954), 357 Mich 654.

CL 1958, § 257.622 (Stat Ann 1962 Rev § 9.2322) was amended by PA 1967, No 3, which amendatory act, among other things, eliminates the prohibition against use of the report other than for statistical purposes. However, CL 1948, § 257.624 (Stat Ann 1960 Rev § 9.2324) which prohibits use in "any court action" of reports required by chapter 6 of the Motor Vehicle Code (PA 1949, No 300), was not amended.

[8] The record shows that Officer Kuchenmeister compiled the regular accident report at the scene of the accident. The assistant prosecutor

Defendants further contend that the plaintiffs failed to make a proper offer of proof of the interview transcript, that it was not a part of the record on appeal and, therefore, the issue just considered and decided should not have been considered by us at all. To decide this case on that ground would, we think, be to adopt a formalistic view of the rule reflected in GCR 1963, 604, which requires one who desires to preserve for review an adverse ruling on admissibility to make a specific offer of what he expected to prove had he been allowed to do so. The purpose of the rule is to provide the trial judge with the information he needs to rule intelligently, and the appellate court with the information it needs to pass on an allegation that he ruled erroneously. *Bujalski* v. *Metzler Motor Sales Company* (1958), 353 Mich 493, 499. Both objectives were accomplished in this case.

While the plaintiff did not enter on the record Mrs. Dean's statement itself, he did clearly identify it. Since the omitted evidence consisted of a document which was identified and available and whose authenticity was not in dispute, we authorized (GCR 1963, 820.1[4]) the addition of the omitted document as part of the record on appeal and are fully apprised of its contents. It is apparent from the trial judge's remarks when he prevented use of the statement for impeachment purposes that he was aware of the nature of the statement and that his ruling would not have been different if the whole statement had been entered on the record. Under the circumstances, we find no need to review the adequacy of plaintiff's offer of proof at the time of

---

took Mrs. Dean's statement, not for statistical purposes, but to aid in determining whether criminal charges should be brought.

See, also, cases discussed in footnote 1.

trial. Compare *Hes* v. *Haviland Products Company* (1967), 6 Mich App 163, 170.

Reversed and remanded for a new trial. Costs to appellant.

T. G. KAVANAGH, P. J., and BEER, J., concurred.