Donna ZAHORIK, Judith Long-Laws, Jacqueline Livingston, Antonia Glasse, and Charlotte Farris, Plaintiffs,

v.

CORNELL UNIVERSITY, Defendant.

No. 80-CV-455.

United States District Court,
N.D. New York.

Jan. 10, 1983.

J. Anthony Gaenslen, Ithaca, N.Y., John de J. Pemberton, University of San Francisco Law School, San Francisco, Cal., Seidenberg & Strunk, Syracuse, N.Y., Bixler & Stumbar, Ithaca, N.Y., for plaintiffs; Faith A. Seidenberg, Syracuse, N.Y., Elizabeth B. Yanof, Ithaca, N.Y., of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., Hogan & Hartson, Washington, D.C., for defendant; John J. Dee, Paul M. Sansoucy, Syracuse, N.Y., Peter W. Tredick, Craig H. Ulman, Patricia R. Ambrose, Washington, D.C., of counsel.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

On January 21, 1982, this Court denied without prejudice plaintiff's motion for

class certification. In so doing, the Court left open the possibility that plaintiffs could come forward at a later time and properly satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. Now, the parties have come to an impasse as a result of this decision. Plaintiffs are seeking very broad discovery of defendant in hopes of meeting the numerosity requirements of Rule 23(a)(1). Defendant opposes this discovery on the ground that the information sought relates to class claims and that plaintiffs should concentrate their efforts on their individual claims. In addition, defendant opposes this discovery on the ground that it is oppressive, burdensome, and largely irrelevant.

Presently before the Court are two motions relating to the above discovery dispute. Plaintiffs have moved to compel answers to their first set of interrogatories served on or about December 11, 1980. Defendant subsequently moved to strike these interrogatories for the reasons already mentioned. The impetus for defendant's motion was the serving by plaintiffs of a request for the production of documents and supplemental interrogatories on or about April 26, 1982.

In resolving the instant discovery dispute, the Court is mindful of the Second Circuit's admonition for courts "to steer a careful course between excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior." *Powell v. Syracuse University*, 580 F.2d 1150, 1154 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *see also Gray v. Board of Education, City of New York*, 692 F.2d 901, 907 (2d Cir.1982). Thus, the Court will have to balance the competing positions of the parties, namely, plaintiffs' need for information to properly present their case, and defendant's desire to avoid costly and oppressive discovery requests.

■ Rule 26 of the Federal Rules of Civil Procedure defines the scope of the federal discovery rules. Any matter, not privileged, may be discovered if it is relevant to the claim or defense of the party seeking discovery. Moreover, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). In the present case, defendant raises a myriad of objections as to why it should not be compelled to respond to plaintiffs' interrogatories. The Court will treat these objections seriatim.

## I. FAILURE TO COMPLY WITH LOCAL RULE 46

■ Defendant has strenuously opposed this Court's consideration of the instant motions because it believes that plaintiffs have failed to comply with both the letter and spirit of Local Rule 46 concerning discovery motions. Rule 46 of the General Rules of the United States District Court for the Northern District of New York provides in part:

> Counsel have the obligation to make good faith efforts among themselves to resolve or reduce all differences relating to discovery procedures and not to file unnecessary discovery motions.
>
> No motion pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure shall be filed unless:
>
> (a) Counsel making the motion has met with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution.
>
> (b) In the event the consultations of counsel do not fully resolve the discovery issues, counsel making a discovery motion shall file with the court as part of his motion papers, an affidavit certifying that he has met with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the court, and has been unable to reach such an agreement. If part of the issues raised by the motion have been resolved by agreement, the affidavit shall specify the issues so resolved and the issues re-

maining unresolved and the reasons therefor. The affidavit shall set forth the date or dates of the meetings, the names of the participants and the length of time taken by the consultations.

While the Court believes that the parties could eventually resolve *some* of their discovery problems through the procedures outlined in Local Rule 46, the Court's guidance is required in outlining future discovery for this case. Accordingly, plaintiffs' alleged failure to comply with Local Rule 46 will not serve to bar consideration of these motions. It is hoped that this decision will set the boundaries for discovery and prevent the need to return to Court for assistance in what was designed to be a party-propelled process.

## II. DISCOVERY DIRECTED TO CLASS CLAIMS

 Defendant has objected to many of plaintiffs' interrogatories because, in its view, the questions asked go to the merits of the class action question that has already been decided adversely to plaintiffs. While it is true that the Court did deny plaintiffs' motion for class certification, that ruling was without prejudice and did not foreclose the possibility of certification at a later time. Defendant relies principally on *Lieberman v. Gant,* 630 F.2d 60 (2d Cir.1980), for the proposition that plaintiffs' broad, class action-directed discovery may be resisted. *Lieberman,* however, was not concerned with the outer limits of discovery in a disparate treatment case under Title VII. Rather, Judge Friendly's opinion in *Lieberman* explored the type of evidence that would be properly *admissible at trial* to meet the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burdens. As explained above, as long as the discovery sought may reasonably be calculated to lead to the discovery of admissible evidence, it is allowable under the discovery rules.

In *Kaufman v. Household Finance Corp.,* No. 77–CV–167, slip op. (N.D.N.Y. Mar. 20, 1978), this Court considered a similar problem with respect to discovery in a case not yet certified as a class action. In *Kaufman,* plaintiff sought to represent a class of persons aggrieved by defendant's violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Before moving for class certification, plaintiff moved to compel defendant to answer her interrogatories. As in the case *sub judice,* defendant objected to the proposed discovery on the grounds that the information sought related to class claims. In addition, defendant argued that the claim was moot and that plaintiff was no longer a member of the class she purported to represent. After disposing of the class membership and mootness claims, the Court held that plaintiff was entitled to discover information relevant to the various factors that must be considered in determining class certification. *Id.* at 9–10. In so holding, the Court recognized that discovery is often necessary before plaintiffs can properly satisfy the requirements of Fed.R. Civ.P. 23(a). Therefore, as long as the discovery sought in the present case is relevant within the meaning of Rule 26(b)(1) and not unduly burdensome or oppressive, defendants may not resist on the ground that it is directed to class rather than individual claims.

## III. RELEVANCE

As noted by the Court in its earlier decision, plaintiffs have brought this suit against Cornell University pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* In their amended complaint, plaintiffs allege "that the defendant's employment practices, as prescribed in an Academic Appointment Manual, consist of vague evaluative criteria and procedures that have a discriminatory impact upon women. Specifically, the plaintiffs contend that defendant has discriminated against one or more of them with respect to tenure, reappointment, hiring, promotions, compensation, and other benefits." Memorandum-Decision and Order of January 21, 1982 at 1–2. Thus, in its present posture, plaintiffs claims are essentially ones that they were treated disparately by defendant on the basis of sex.

With regard to defendant's claim that specific requests or areas of information should not be pursued, the Court declines to examine each interrogatory line by line. Clearly, the breadth of the 57 interrogatories covering 84 pages dictates that such a course would be a waste of judicial resources. Rather, the court will explore the general areas of objection and make rulings applicable thereto. Once this task is accomplished, plaintiffs are directed to reformulate their discovery requests to comply with this decision.

### A. Prior Acts of Discrimination

Plaintiffs have made broad requests concerning defendant's past history of discrimination based on sex. In particular, they seek internal complaints or grievances alleging sex discrimination, investigations related thereto, and the results of such grievances or investigations. Defendant opposes the production of this material, arguing that complaints of discrimination focus on individual facts and circumstances and that the need for confidentiality far outweighs plaintiffs' need for this information.

■ In a private, non-class action setting, a Title VII plaintiff must meet the initial burden of proving discrimination as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The sequence of proof necessary to prevail in a Title VII claim has been stated in countless reported decisions in the federal courts, *see, e.g., Wade v. New York Tel. Co.,* 500 F.Supp. 1170, 1174–79 (S.D.N.Y.1980), and need not be repeated here. Suffice it to say, that evidence of general patterns of discriminatory treatment by an employer is relevant even in the individual disparate treatment case. *Lieberman v. Gant,* 630 F.2d 60, 68 (2d Cir.

1980); *see also McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825. Although such evidence will not be determinative of the discrimination issue, *id.* at 805 n. 19, 93 S.Ct. at 1826 n. 19, it is nevertheless relevant and therefore discoverable pursuant to Fed.R. Civ.P. 26(b)(1).

■ Accordingly, plaintiffs are entitled to discover past instances of sex discrimination against female educators at defendant University and may inquire into the treatment these female educators have been afforded by defendant.[1] They may not, however, conduct a general "fishing expedition" into areas unrelated to their claims such as the University's treatment of non-academic personnel, administrators, or discrimination claims based on factors other than sex. Although plaintiffs have dropped their request for information relating to race, they maintain that the age of persons involved in the discovery sought is relevant to making comparisons and statistical analyses. The Court agrees with plaintiffs and concludes that they should be given this information. Therefore, when plaintiffs inquire about a group of female educators in a given area, they are entitled to know the ages of these women. This additional information surely could pose no added burden in responding to the discovery sought.

### B. Discovery Cutoff Date

■ A great debate between the parties has been brewing over the cutoff date for discovery. Initially, plaintiffs sought information dating back to 1965, and then moved this date ahead to March 24, 1972, the effective date of Title VII for educational institutions. *See Weise v. Syracuse University,* 522 F.2d 397, 409–11 (2d Cir.1975). Defendant refused from the beginning to provide any information prior to the March 24, 1972 cutoff date, and then decided that it would

---

1. In some instances, defendant may be able to invoke a privilege regarding certain information sought by plaintiffs. When this situation occurs, defendant is directed to answer the discovery in a complete and responsive manner and specifically articulate the privilege sought to be invoked. Moreover, defendant should not refrain from responding to the discovery. Rather, the information sought should be sufficiently identified by either name, date or some other fashion so as to allow the privilege to be challenged in an orderly manner. The parties should be mindful of Local Rule 46 regarding discovery disputes and should make a good faith attempt to resolve such disputes *without* Court intervention.

not provide any information relating to events prior to August 19, 1976, the earliest date that it believed liability could attach. Subsequently, plaintiff agreed to a cutoff date of July 1, 1974 for discovery material.[2] Because back pay awards may be retroactive for two years prior to the date of the filing of a charge with the EEOC, 42 U.S.C. § 2000e–5(g) (1976), the Court must look to the earliest date that one of the plaintiffs filed charges of discrimination. In this Court's Memorandum-Decision and Order dated January 21, 1982, it was noted that plaintiff Livingston filed charges on March 23, 1977. *See* First Amended Complaint ¶ 24. Thus, the Court finds that the proper date for the cutoff of discovery information is March 23, 1975, two years prior to the earliest date that plaintiff Livingston filed her charges of discrimination with the EEOC.[3]

C. *Affirmative Action Plans*

█ Plaintiffs have requested identification and production of all affirmative action plans of defendant University. They claim that the weight of available authority supports their position that such plans are discoverable, at least after the entry of an appropriate protective order. *Ligon v. Frito-Lay, Inc.,* 19 FEP Cases 722 (N.D.Tex. 1978); *EEOC v. ISC Financial Corp.,* 16 FEP Cases 174 (W.D.Mo.1977); *Dickerson v. United States Steel Corp.,* 14 FEP Cases 1448 (E.D.Pa.1976). Not surprisingly, defendant claims that its affirmative action plans are clearly beyond the bounds of the federal discovery rules. *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53 (E.D.Pa.1979); *Sanday v. Carnegie-Mellon University,* 22 Fed.R.Serv.2d 1424 (W.D.Pa.1975). As can

be seen from the above example, the question of whether affirmative action plans are discoverable in a Title VII action is far from being subject to a clear answer. *Compare O'Connor v. Chrysler Corp.,* 86 F.R.D. 211 (D.Mass.1980) *with Ford v. University of Notre Dame,* 29 FEP Cases 1710 (N.D. Ind.1980) *and Rodgers v. United States Steel Corp.,* 12 FEP Cases 100 (E.D.Pa. 1975).

In arriving at the above decisions, the courts used various factors and policies. For example, some courts have held that it would be unfair to make a defendant disclose the confidential self evaluations and analyses contained in these plans when Title VII requires this information to be compiled. Other courts have held the information to be discoverable, subject only to the entering of an appropriate protective order. Finally, some courts have ordered that the factual and data portions of the plans be disclosed but that those portions of the plan containing critical self analysis mandated by law need not be disclosed. For a recent discussion of the so-called "critical self analysis privilege," *see Resnick v. American Dental Association,* 95 F.R.D. 372, 34 Fed.R. Serv.2d 1371 (N.D.Ill.1982). While the latter option of having defendant delete those portions of the plans containing critical self analysis is appealing, it presents a definite problem in the area of monitoring. Considering the bitter discovery disputes in this litigation to date, the Court declines to exercise this option or to follow the lead of the court in *O'Connor v. Chrysler* and conduct an *in camera* review to check compliance with the court order. Therefore, the Court finds that defendant's affirmative action plans are discoverable.[4] Upon the en-

---

2. *See* Plaintiff's Supplemental Memorandum in Support of Motion to Compel Answers to Interrogatories, p. 9 n. 2. At this juncture, the Court feels compelled to comment on what has come to be an accepted practice in this litigation, namely, the filing of brief after brief together with narrative letters from counsel reiterating their positions for one "final" time. Although the Court declines to place a limit on submissions for future motions, the parties are admonished to refrain from burdening the Court with a mountain of papers. *See, e.g.,*

Attorney Gaenslen's letter of June 4, 1982; Attorney Tredick's letter of May 24, 1982.

3. This cutoff date of March 23, 1975 will also serve to alleviate some of defendant's claims that the discovery sought is oppressive and burdensome. *See* section IV *infra.*

4. The Court's decision with respect to defendant's affirmative action plans applies with equal force to the salary studies and internal investigations or reviews of defendant's em-

try of an appropriate protective order,[5] defendant shall produce such plans in accordance with this Court's direction as to time. *See* section III(b) *supra.*

#### D. *University Wide Reports*

█ Plaintiffs have requested reports from various sources touching upon many aspects of life and employment at defendant University. In their present form, the Court agrees with defendant that these requests are overbroad and go far beyond the subject of this lawsuit. However, many reports prepared by defendant will undoubtedly be relevant to plaintiffs' claims. Thus, consistent with this Court's discussion on burdensomeness, section IV *infra,* defendant may be required to identify those reports touching upon the subject matter of this action. Once the reports, if any, are identified, then plaintiffs may request production of those reports to aid in the preparation of their case.

#### E. *Computer Information* .

█ Plaintiffs have requested a wealth of information concerning the information contained in, and capabilities of, defendant's computers. Again, the Court agrees with defendant that these requests are vague and overbroad. It is well settled that a Title VII plaintiff may be allowed access to information in an employer's computer when that information is relevant to the prosecution of the lawsuit. Such access may take the form of a "key" to information on a printout, copies of computer tapes, or other similar procedures. However, there is no rule allowing free access to a computer containing confidential information irrelevant to the claims of a plaintiff.

The Court believes that plaintiffs should reformulate their requests to cover only those areas relevant to this action. Here too the requests should be ones for identification only. Once identification has occurred, plaintiffs may then request reasonable access.

#### F. *Biographical and Statistical Data on Tenure-Track Employees*

█ In their Supplemental Memorandum in Support of Motion to Compel Answers to Interrogatories, plaintiffs have furnished the Court with an affidavit from one of their trial experts, George R. LaNoue. Dr. LaNoue's affidavit outlines the procedures he intends to use in preparing plaintiffs' case. In the Court's view, the information requested by Dr. LaNoue resembles the "comparative evidence" and "statistical evidence" discussed by the court in *Lieberman v. Gant,* 630 F.2d at 67–69.

In *Lieberman,* the Second Circuit, per Judge Friendly, affirmed a district court's refusal to allow certain comparative and statistical evidence to be introduced at trial. The comparative evidence rejected by the district court consisted, in large part, of 17 folders of male faculty members at the University of Connecticut. These folders were used to prepare abstracts of comparison between the plaintiff and those male faculty members who received tenure. This evidentiary ruling was affirmed for two reasons. First, the plaintiff in *Lieberman* had merely offered the trial court an opportunity "to engage in a tired-eye scrutiny of the files of successful male candidates for tenure in an effort to second-guess the numerous scholars at the University of Connecticut who had scrutinized Dr. Lieberman's qualifications and found them wanting, ..." *Id.* at 68. No true comparative evidence within the meaning of the *McDon-*

---

ployment practices. *See Ford v. University of Notre Dame,* 29 FEP Cases 1710, 1711 (N.D. Ind.1980). As with the requests for information relating to prior complaints by female educators, there may be instances where defendant may seek to invoke a privilege and withhold the information. If this occasion arises, defendant is directed to follow the procedure outlined in footnote 1 *supra.* That is, answering of those portions of the requests that do not touch upon the privilege, and proper identification of that information claimed to be covered by the privilege.

**5.** Defendant is hereby directed to submit a proposed order governing the use and dissemination of information found in its affirmative action plans as well as other material claimed to require confidentiality.

*nell Douglas* decision was offered. Instead, plaintiff had simply presented the court with persons whom plaintiff claimed had received better treatment than she.[6] Second, the evidence was excluded by the trial court on the grounds of relevance because plaintiff had failed to make complete comparisons of her abilities to those of the successful male applicants for tenure. Thus, the judge was justified in rejecting this evidence pursuant to Fed.R.Evid. 403.

The statistical evidence rejected at trial was an "Organizational Report" on the status of women at the University of Connecticut and six annual university reports on salary differentials between men and women faculty members. The "Organizational Report" was excluded not only because it contained information on departments other than plaintiff's own English Department and information that had nothing to do with the University of Connecticut. As to the salary differential charts, the court found no error in the exclusion of this evidence since evidence of the English Department salaries was admitted. Moreover, the error was found to be harmless in light of the overwhelming evidence of the neutrality of the tenure decision against Dr. Lieberman.

In the present case, plaintiffs seek to compile similar information to that excluded in the *Lieberman* case. According to defendant, however, *Lieberman* serves as a complete bar to these requests. *See* section II *supra*. Nevertheless, the Court in *McDonnell Douglas* did hold that an employer's general policy and practice with respect to minority employment is one method of showing pretext. Statistics as to the employer's policy and practice may also be used to show that the challenged activity conformed to that discriminatory policy or practice. 411 U.S. at 804–05, 93 S.Ct. at 1825. Here, the Court must determine what information may be *discovered* so as to enable plaintiffs to prove their case.

As to the comparative evidence, the Court finds that such evidence, in proper form, may be useful to plaintiffs in preparing for trial. Accordingly, defendant is directed to respond to plaintiffs' reasonable requests for information concerning defendant's faculty members and their treatment by defendant. The determination of reasonableness shall be made with reference to section IV of this opinion covering the burdensome nature of the discovery requests.

Finally, as to statistical evidence, the Court finds that this evidence too may be useful to plaintiffs in preparing their case. Although the court in *Lieberman* excluded comparative statistical analysis covering the entire University of Connecticut, it did not say that such evidence should be rejected in every case. Rather, the court held that the ruling was not such as to warrant a reversal in light of the compelling evidence of nondiscrimination put forward by the defendant. Just as the reasonableness of the requests for comparative evidence are to be judged by the burdensomeness test, so too are the requests for statistical evidence.

## IV. BURDENSOMENESS

In support of its claim that plaintiffs' discovery requests place an extreme burden on personnel at all levels of the University, defendant has submitted seven affidavits from various administrators with knowledge of the efforts required to compile this information.[7] The requests have been broken down by defendant into four categories: (1) information concerning appointees to tenure-track positions; (2) identification of every data base for every salary study

---

**6.** As noted by the court, Congress did not intend that the courts sit as "Super-Tenure Review Committees" to make independent evaluations on the qualifications of applicants for tenure. 630 F.2d at 67 (citing *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1270 (M.D.Pa.1976)). If plaintiffs are to succeed in this action, they must come forward with evidence of discrimination by defendant. They may not simply rely on this Court to infer discrimination from the "honest even though partially subjective evaluation of their qualifications . . . ." *Id.*

**7.** *See* Defendant's Supplemental Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel Answers to Interrogatories.

performed within the University; (3) information concerning every report touching on sex discrimination, affirmative action, status of women, salary studies, sexual harassment, Title VII, and Title IX; and (4) identification of internal complaints or grievances alleging sex discrimination. In substance, defendant claims that in order to answer these broad requests, members of at least ten colleges of the University and one hundred departments would be required to conduct exhaustive interviews and file searches. By way of an explanation, defendant claims that, unlike an industrial employer, it has no centralized repository for records and therefore cannot quickly obtain the requested information from one source.

At first blush, defendant's argument appears to be quite reasonable. However, it seems as though defendant is attempting to prevent plaintiffs from adequately preparing their case simply because they do not possess an efficient record-keeping system. In the Court's view, defendant and all other employers covered by Title VII have been on notice since the Act's passage that they may be required to substantiate their employment practices with records and reports. Moreover, following the Supreme Court's decision in *McDonnell Douglas Corp. v. Green* on May 14, 1973, employers have been on further notice that they may be forced to defend an action wherein a plaintiff will be using comparative and statistical evidence. Thus, defendant's disjointed record-keeping system will not serve to prevent plaintiffs from obtaining the information they need to prepare for trial.

 When a party desires to object to a particular interrogatory, Rule 33(a) of the Federal Rules of Civil Procedure provides that such objection and the reasons therefor shall be stated in lieu of an answer. Defendant has clearly lived up to its duty under Rule 33 and the Court rejects the assertion by plaintiffs that the objection and supporting affidavits were untimely.

Still, the mere fact that a party objects to an interrogatory as burdensome will not relieve that party from answering. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 2174 (1970); 4A J. Moore, *Moore's Federal Practice,* ¶ 33.27 (2d ed. 1982). The cases have held that a party may be required to conduct research, compile lists, or, in the alternative, invoke the option of Rule 33(c) and provide the interrogating party access to the business records and conduct his own research. *See, e.g., Burns v. Thiokol Chemical Corp.,* 483 F.2d 300, 307 (5th Cir.1973). Moreover, the court in *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 343 (10th Cir.1975), held in a related context that "[i]f the information sought promises to be particularly cogent to the case, the defendant must be required to shoulder the burden. There is a remedy, of course, if the effort fizzles. The costs can finally be assessed to the interrogating parties." This appears to be a sensible solution.

 In the present case, the Court finds that the parties have two basic options. First, defendant can avail itself of the opportunity to provide plaintiffs access to the pertinent records pursuant to Rule 33(c).[8] Second, if defendant chooses not to follow this procedure, then it must comply with plaintiffs' discovery requests on a modified scale. This modified scale shall consist of a more narrow and tailored line of inquiry by plaintiffs. In this regard, plaintiffs are directed to review their exact needs for information with their trial experts and identify specifically the colleges in the Ithaca, New York area that are to be subject to discovery. Thus, defendant will no longer be able to object on the ground that the requests contain incomplete, inconsistent or haphazard lists of facilities.

Defendant's submissions on the question of burdensomeness are all geared to preparing information from March 1972 to the present. In view of this Court's decision as to a discovery cutoff date of March 23,

---

8. This option may prove troublesome for defendant in terms of its need to keep certain files and information confidential. Thus defendant

may be forced to resort to the procedure outlined in footnote 1 *supra.*

1975, it appears that the burden will be lessened to a great degree. In addition, defendant has alluded to some type of centralized record-keeping system in effect for part of the University in its Objections to Certain of Plaintiffs' First Interrogatories filed February 17, 1981. Thus, not all of the requested information will require exhaustive, individual file searches.

The Court recognizes that compilation of the requested material will be a burden to defendant. However, this information is in the sole custody and control of defendant and it would be grossly unjust to allow defendant to have access to this material for use in rebutting plaintiffs' case while restricting plaintiffs' to discovery in only a small segment of the University area.

## V. CONCLUSION

To paraphrase Judge Friendly in *Lieberman,* it is hoped that this decision will clarify what the Court believes to be the proper scope for discovery in this case. Since the Court has treated both the motion to compel and motion to strike as simply a joint motion to set the scope for future discovery, both motions are hereby granted in part and denied in part. As to the requests for costs and attorney's fees, the Court declines to exercise its discretion and award fees or costs to either side. Finally, although the Court has spent a great deal of time reviewing the numerous submissions by the parties and carefully researching the applicable law, it can only be assumed that future disputes as to discovery will arise. Therefore, no party may make a discovery-related motion before this Court without first fully utilizing the procedures outlined in Local Rule 46. If this fails, then the parties are hereby directed to request a discovery conference with this Court in order to avoid another protracted dispute such as the one at bar.

It is so Ordered.