**Mary SISKONEN, Plaintiff,**

v.

**STANADYNE, INC., et al., Defendants.**

**No. G87–437 CA1.**

United States District Court,
W.D. Michigan, S.D.

March 15, 1989.

Joseph J. Vogan, Grand Rapids, Mich., for plaintiff.

William H. Fallon, Grand Rapids, Mich., Gregory P. Szuter, Cleveland, Ohio, for defendants.

## OPINION

JOSEPH G. SCOVILLE, United States Magistrate.

This diversity action arises from the discharge of plaintiff from her employment as a territory manager by defendant Moen Division, Stanadyne, Inc. Plaintiff worked for Moen for an eleven-month period from June, 1984, through May 6, 1985, at which time her employment was terminated. She originally brought this action in the Kent County Circuit Court, alleging four claims under Michigan law: (1) a claim for wrongful discharge, under the theory recognized in *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); (2) a claim for employment discrimination on account of sex, in violation of the Elliott–Larsen Civil Rights Act, Mich.Comp.Laws § 37.2101 *et seq.;* (3) a claim for negligent discharge, apparently based on the now-discredited theory of *Chamberlain v. Bissell,* 547 F.Supp. 1067 (W.D.Mich.1982); and (4) a claim against defendant Otrusina, plaintiff's former supervisor, for tortious interference with her employment contract. Defendants removed the case to this court on May 15, 1987.

On January 25, 1989, I conducted a hearing on several discovery motions filed by both parties. At that time, defendant requested and was granted an opportunity for further briefing on the issue of the discoverability of defendant's affirmative action plans and EEO–1 reports. The parties have now exhaustively addressed this issue. After review of the submissions of the parties, I conclude that defendants should produce the requested documents for the reasons set forth below.

## DISCUSSION

In an effort to meet her burden of showing gender-based discrimination, plaintiff has sought broad discovery from defendant. Defendant has strenuously opposed many of plaintiff's discovery requests. As a general matter, I have found plaintiff's requests to be overly broad in subject matter and time. I have likewise found defendant's attitude towards discovery to be unduly grudging and obstructive. These general reactions apply as well to the specific discovery dispute presently before the court.

Plaintiff seeks defendant's affirmative action reports and EEO–1 reports for the years 1967 to present. Defendant objects, raising two arguments: (1) the documents are privileged from disclosure under the "critical self-analysis" privilege; and (2) the documents are irrelevant and not discoverable under the standard established by Rule 26 of the Federal Rules of Civil Procedure.

In adjudicating defendant's privilege claims in this diversity case, this court must apply the law of Michigan. Federal Rule of Evidence 501 provides that where "state law provides the rule of decision, the privilege of a witness, person, government, state or political subdivision thereof shall be determined in accordance with State law." *See Peterson v. Chesapeake & Ohio Ry. Co.,* 112 F.R.D. 360, 362 (W.D.Mich. 1986); *Credit Life Ins. Co. v. Uniworld Ins. Co., Ltd.,* 94 F.R.D. 113 (S.D.Ohio 1982).

■ In deciding issues of state law, this court "must apply state law in accordance with the then controlling decision of the state's highest court." *Angelotta v. American Broadcasting Co.,* 820 F.2d 806, 807 (6th Cir.1987). However, Michigan has not adopted a statutory self-critical analysis privilege, nor has *any* Michigan court recognized such a privilege. *See Peterson v. Chesapeake & Ohio Ry. Co.,* 112 F.R.D. at 362–63. This court must therefore determine whether the Michigan Supreme Court would recognize such a privilege in the circumstances present here. *See Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Even the federal courts are in disarray on the question whether such a privilege applies to prevent disclosure of employer-generated analytical materials in federal discrimination cases. The privilege was apparently first recognized in *Banks v. Lockheed–Georgia Co.,* 53 F.R.D. 283 (N.D.Ga. 1971), a Title VII case. The court there recognized a privilege protecting a company's critical self-evaluations of its equal opportunity efforts, on the theory that

forced disclosure would discourage candid self-evaluation and impede the development of affirmative action programs. 53 F.R.D. at 285. Since the *Banks* case, the federal courts have split sharply on the question of the privilege's application in discrimination cases. Some courts refuse to recognize the privilege at all in employment discrimination cases. *E.g., Capellupo v. FMC Corp.,* 46 F.E.P. Cases 1193, 1988 WL 41398 (D.Minn.1988); *Hardy v. New York News, Inc.,* 114 F.R.D. 633 (S.D.N.Y.1987); *Witten v. A.H. Smith & Co.,* 100 F.R.D. 446 (D.Md.1984), *aff'd,* 785 F.2d 306 (4th Cir. 1986). Other courts have found that employer-generated documents, such as affirmative action plans, may be protected if they meet a four-prong test for recognition of the privilege. *See O'Connor v. Chrysler Corp.,* 86 F.R.D. 211, 217 (D.Mass.1980) (protection available only for documents prepared for mandatory government reports; subjective in nature; not factual; but not when need for protection is outweighed by plaintiff's need for discovery). These courts have recognized the privilege in differing degrees. *E.g., Jamison v. Storer Broadcasting Co.,* 511 F.Supp. 1286, 1296–97 (E.D.Mich.1981), *aff'd in part, rev'd in part,* 830 F.2d 194 (6th Cir. 1987) (subjective affirmative action data is privileged); *Roberts v. National Detroit Corp.,* 87 F.R.D. 30, 32 (E.D.Mich.1980) (statistics not privileged). Still other courts have ordered production of affirmative action plans subject to a protective order. *See Zahorik v. Cornell University,* 98 F.R.D. 27, 33 (N.D.N.Y.1983).

Given the state of the law, I find it impossible to conclude with any confidence that the Michigan Supreme Court would recognize a critical self-analysis privilege. I reach this conclusion for three reasons. First, the Michigan courts consider the law of privilege to be essentially a matter for the Legislature. "Only in the protection of a compelling public interest should privileges be judicially expanded." *Conlon v. Dean,* 14 Mich.App. 415, 165 N.W.2d 623, 627 (1968), *lv. denied,* 381 Mich. 802 (1969). A federal court should be even more reluctant to fashion new doctrines of state privilege law. Second, Michigan passed up at least one chance to adopt the critical self-

analysis privilege by court rule. At the time the Michigan Rules of Evidence were adopted in 1978, Michigan had the opportunity to adopt U.S. Supreme Court Standard 502, which codified the critical self-analysis privilege. Michigan declined to do so. *See* 2 Weinstein's Evidence ¶ 502[05] at 502–11 (1988). Finally, I believe that the Michigan Supreme Court would find more persuasive the reasoning of cases such as *Witten, Hardy,* and *Capellupo,* which reject the privilege in this circumstance. Those cases conclude, with some force, that disclosure of employer-generated documents in discrimination litigation will not impede the basic goals of the anti-discrimination and equal opportunity laws.

Accordingly, I decline to recognize a privilege under Michigan law where the Michigan courts and legislature have not done so. Defendant's assertion of a critical self-analysis privilege for its EEO–1 reports and affirmative action reports is hereby OVERRULED.

▮ Defendant asserts the alternative argument that the requested documents are irrelevant and not subject to discovery. Defendant places principal reliance upon *Jamison v. Storer Broadcasting,* 511 F.Supp. at 1296, in which Judge Boyle held that admission of an affirmative action plan into evidence was improper under Evidence Rule 403, because the plan's "marginal" probative value was outweighed by its prejudicial effect. This may well be the proper ruling on a plan's admissibility into evidence, but it is not dispositive on the issue of discoverability. Discoverability is governed by the broader standard of Rule 26(b), and even "marginal" probative value should suffice for discovery purposes. The federal courts therefore generally hold that such documents are discoverable, questions of privilege aside. *See, e.g., Zahorik v. Cornell University,* 98 F.R.D. 27, 33 (N.D. N.Y.1983).

I have already decided in the context of other motions that plaintiff is entitled to discovery to support her contention that her firing was part of a general pattern of discrimination. I have declined to extend that discovery into areas such as age or

race discrimination against other employees, principally on the ground that the burden on defendant of compiling such information outweighed any benefit to plaintiff. *See* Fed.R.Civ.P. 26(b)(1). The burden on defendant of producing its EEO–1 reports and affirmative action plans, however, is negligible, since those documents already exist. These documents should therefore be produced in their entirety.

█ The temporal scope of plaintiff's request is excessive. Plaintiff was employed by defendant for only an eleven-month period, from June of 1984, through May of 1985. It is difficult to conceive the usefulness to plaintiff of reports dating back to 1967. Defendant shall produce its affirmative action plans and EEO–1 reports for the years 1982, 1983, 1984, 1985, and 1986. This five-year period embraces the time that plaintiff was employed by defendant and should be sufficient to indicate any pattern of discrimination prevalent during her tenure. To protect the confidentiality of these documents, they will be subject to the protective order dated August 3, 1988.