**Jerry Malone WILLIAMS, et al., Plaintiffs,**

v.

**VULCAN–HART CORPORATION, et al., Defendant.**

**No. C90–0312–L(B).**

United States District Court, W.D. Kentucky, at Louisville.

April 22, 1991.

Robert A. Donald, III, Louisville, Ky., for plaintiffs.

Bill Blodgett, Louisville, Ky. and Daniel Hammer, Dayton, Ohio, for defendant.

### MEMORANDUM

BALLANTINE, District Judge.

In this memorandum, the court addresses the motion of the plaintiffs to compel the production of portions of an affirmative action plan prepared by the defendants. The case involves charges of racial and employment discrimination brought under the Kentucky Civil Rights Act, KRS 344.-010. This court has diversity jurisdiction. For the reasons detailed below, the motion to compel will be granted.

In April of 1990, this action was brought by sixteen employees of Vulcan–Hart Corporation against both Vulcan–Hart and its parent corporation, Premark International, Inc. The plaintiffs assert claims of sex and race discrimination in all facets of their employment in violation of the Kentucky Civil Rights Act, KRS Chapter 344. The

plaintiffs seek to compel the production of portions of an affirmative action plan prepared by the defendant Vulcan–Hart in voluntary compliance with federal regulations[1]. Defendant objects on the grounds that the information is privileged as "self-critical analysis".

In adjudicating defendant's claim of privilege in a diversity case, this court must apply Kentucky law. Federal Rule of Evidence 501 provides that where "State law provides the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law". Because the plaintiffs are prosecuting this action under Kentucky's Civil Rights Act, the law of Kentucky controls with regard to evidentiary privilege.

In deciding issues of state law, this court "must apply state law in accordance with the then controlling decision of the state's highest court." *Angelotta v. American Broadcasting Co.*, 820 F.2d 806, 807 (6th Cir.1987). No Kentucky court has previously recognized the "self-critical analysis" privilege in a published decision. Therefore, this court must determine whether the Kentucky Supreme Court would recognize such a privilege in the circumstances presented here. *See; Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It will be useful to begin by considering the justifications advanced for the privilege.

The self-critical analysis privilege which the defendants seek to assert is a relatively recent development. The privilege was first recognized in *Bredice v. Doctors Hospital Inc.*, 50 F.R.D. 249 (D.D.C.1970), aff'd 479 F.2d 920 (D.C.Cir.1973). *Bredice* held that the minutes of hospital peer review staff meetings were properly shielded from discovery by the plaintiff in a malpractice action against the hospital. The *Bredice* court concluded:

---

**1.** Executive Order No. 11246 enunciated a policy of equal employment opportunity in government employment, employment by federal contractor and subcontractors and employment under federally assisted construction contracts. Pursuant to that order, the Secretary of Labor promulgated regulations that require each con-

tractor who meets certain criteria to develop a written affirmative action compliance program. 41 CFR § 60–1.40(a). The regulations require various types of critical self-evaluation with regard to problems and goals in minority employment.

There is an overwhelming public interest in having those staff meetings held on a confidential basis so that the flow of ideas and advice can continue unimpeded ... These committee meetings, being retrospective with the purpose of self-improvement, are entitled to a qualified privilege on the basis of the overwhelming public interest.

*Id.* at 251.

The privilege was first recognized in an employment discrimination case in *Banks v. Lockheed–Georgia Co.*, 53 F.R.D. 283 (N.D.Ga.1971), a Title VII case. That court recognized a privilege protecting a company's critical self-evaluations of its equal opportunity efforts, on the theory that forced disclosure would discourage candid self-evaluation and impede the development of affirmative action programs. 53 F.R.D. at 285. The courts have been divided since the *Banks* decision on the question of whether the privilege should be recognized in discrimination actions. The courts which have recognized the privilege have placed restrictions on its application. The most commonly used analysis in these cases favors protection of materials which meet three criteria: First, materials protected have generally been those prepared for mandatory governmental reports; second, only subjective, evaluative materials have been protected; finally, courts have been sensitive to the need of the plaintiffs for such materials and have denied discovery only where the policy favoring exclusion of the materials clearly outweighed plaintiff's need. *See* e.g.; *Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431 (E.D.Pa.1978) and cases cited therein.

Those courts which decline to recognize the privilege cite the strong countervailing policy in favor of private enforcement of the anti-discrimination laws. Litigation is itself a means of furthering the goal of equal employment opportunity. To the extent that the defense of "self-critical analysis" conflicts with a plaintiff's ability to gather information necessary to prove his or her case, the recognition of such a defense hampers enforcement of equal employment laws. *See* e.g.; *Witten v. A.H. Smith & Co.*, 100 F.R.D. 446 (D.Md.1984).

Courts also have seriously questioned the underlying assumption that the requirement of disclosure would significantly discourage self-critical activity. In *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211 (D.Mass 1980), the court points out that, since the evaluations are not entirely voluntary, they will occur even if the threat of discovery is present. 86 F.R.D. at 217. Further, significant deterrents to candid self-evaluation may already exist. Individual employees charged with preparing self-evaluative reports may fear reprisals from within the organization if they report too harshly. Additionally, the reports are not shielded from scrutiny by the EEOC and other government agencies. *See;* 41 CFR § 1–12.811 (1983). Even if a privilege is recognized in a private context, employers may still fear that their evaluations will be used against them. Finally, because courts regularly consider compliance with an affirmative action plan as evidence of a defendant corporation's attention to a problem or as an affirmative defense to a claim of discrimination, companies have an incentive to set safe goals to provide themselves with ready evidence of compliance. *See; Witten, supra; Martin et al. v. Potomac Electric Power Co.*, 54 Empl.Prac.Dec. (CCH) P40,079, 1990 WL 158787. This reasoning has led a number of courts to refuse to acknowledge the privilege on the basis that the goals of the anti-discrimination laws are best served by allowing individual plaintiffs access to information which may be essential to their case [2].

Against this background, the court must examine how the courts of Kentucky would respond to defendant's assertion of the privilege. As noted above, Kentucky has never recognized the self-critical analysis privilege. The question has never been addressed in the employment discrimina-

---

2. *See,* e.g., *Siskonen v. Stanadyne, Inc.*, 124 F.R.D. 610 (W.D.Mich.1989); *Capellupo v. FMC Corp.*, 46 Fair Empl Prac.Cas. (BNA) 1193, 1988 WL 41398 (D.Minn.1988); *Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y.1987); *Zahorik v. Cornell Univ.*, 98 F.R.D. 27 (N.D.N.Y. 1983).

tion context; however, the Supreme Court of Kentucky has refused to recognize a common law privilege for discovery of records related to physician peer review procedures. In *Nazareth Literary & Benevolent Inst. v. Stephenson*, Ky., 503 S.W.2d 177 (1973), the Court explicitly rejected the holding of *Bredice*, the case that established the self-critical analysis privilege. In response to the argument that a privilege is necessary as a matter of public interest to avoid discouraging honest communication, the court wrote:

"... one might well debate wherein the public interest lies. Claims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively few instances in the common law."

503 S.W.2d at 179. This approach was reaffirmed most recently in *Sweasy v. King's Daughters Mem. Hosp.*, Ky., 771 S.W.2d 812 (1989).

It has consistently been the expressed policy of the Kentucky Supreme Court to decline to recognize a privilege where it has not been expressed in the general laws of evidence existing in the state or in legislative enactment, except in the most compelling situations. *Nazareth Literary & Benevolent Inst. v. Stephenson*, Ky., 503 S.W.2d 177 (1973); *The Lexington Herald–Leader Co. v. Beard*, Ky., 690 S.W.2d 374 (1984). Kentucky's courts have chosen not to create a "self-critical analysis" privilege in other contexts, and this court cannot conclude that, given the strong policy arguments on both sides, Kentucky would choose to deviate from its long charted course of judicial restraint in the creation of such a privilege here.

Accordingly, the motion of the plaintiffs to compel production of the portions of the affirmative action plan withheld by the defendants will be granted. Defendants will be given 30 days from the date of this order to produce the disputed materials.

IT IS SO ORDERED.