**Alex BRADLEY, Plaintiff,**

**v.**

**MELROE COMPANY, et al., Defendants.**

**No. 90–1676.**

United States District Court,
District of Columbia.

Feb. 6, 1992.

Wayne M. Mansulla & Christopher V. Tisi, Ashcraft & Gerel, Washington, D.C., for plaintiff.

Michael T. Wharton, Wharton, Levin & Ehrmantraut, Annapolis, Md., Alan R. Siciliano, Ann Marie King, O'Malley, Miles & Harrell, Upper Marlboro, Md., for defendants.

Dennis R. Carluzzo, Fairfax, Va., for third-party defendants.

MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate Judge.

The plaintiff Alex Bradley, Jr. brings this diversity action for damage for personal injuries alleged to have occurred while using a Bobcat Skid Steer Loader (Bobcat) manufactured by the defendant Melroe Company. During the course of discovery, the plaintiff learned of seven other accidents resulting in personal injuries, all of which involved the use of the Bobcat seat bar interlock mechanism, the mechanism involved in the plaintiff's accident. Melroe provided the plaintiff with copies of accident reports for each accident. However, these reports furnished little more than the date, place of accident, the fact of injury and the name and address of the reporter. In follow-up discovery, the plaintiff sought production of the in-house investigative files for each of these accidents. In response, Melroe's counsel declined to voluntarily produce these records asserting

> The investigative files are just that; they reflect notes, correspondence and related materials generated during the course of investigations undertaken by Melroe and/or its designee, Cigna. The notes and correspondence are replete with recommendations regarding how to proceed with the investigation, whether there was a liability question, the potential value of the case and opinions on how the accident happened and how the investigation should be handled. In my view, the filed in their entirety are protected by the work product doctrine and, in a few particular instances, by the attorney-client privilege.

(Plaintiff's Motion to Compel, p. 6).

In support of its motion to compel, the plaintiff argues that these files were prepared in the normal course of Melroe's business, therefore, the work product doctrine is not implicated and the information sought is discoverable. He directs the Court's attention to the deposition testimony of Carmen Lynnes, Melroe's chief engineer and the designer of the seat bar inter-

lock system to establish that the work product doctrine is not applicable.

The plaintiff argues that "Mr. Lynnes' testimony establishes that the subject investigative reports were prepared and submitted to him 'as a matter of business practice' (Lynnes' Dep. at 95). His review was done for a business purpose of improving the product and not for the purpose of litigation (Id. at 96–97). Indeed, Mr. Lynnes agreed that he reviewed this 'such that (he could) make decisions with regard to design.' (Id. at 218)."

In opposition, Melroe argues that a complete reading of Mr. Lynnes' deposition discloses that the accident reports are directed to Thomas Ihringer, an engineer and Product Safety Manager for purposes of promptly investigating an accident and that reports were furnished Lynnes solely for the purpose of determining whether design changes were necessary.

Melroe asserts that upon receipt of an accident report, Ihringer directs an investigation to determine: (1) if a Melroe product was involved, (2) if so, was the product altered, modified or substantially changed after the sale, and (3) the facts of the accident. Melroe contends that by getting involved early while the facts are fresh, it will be in a better position to resolve or defend any future litigation that may arise out of the accident.

Melroe does not contend that any of the investigations found in the seven files at issue were conducted by or at the direction of an attorney in anticipation of litigation, but rather to uncover facts while still available before they may be lost. In some instances, the report is forwarded to its liability insurance carrier, but even that investigation was coordinated by Ihringer.

Melroe suggests that the Court inspect *in camera* each of the files to confirm that the material contained in each is work product protected.

In reply, the plaintiff argues that since the documents also serve a non-litigation purpose, they are required to be produced in their entirety without *in camera* screening. Furthermore, the plaintiff continues, Melroe has failed to demonstrate how the attorney-client privilege is applicable to any of the documents. Accordingly all seven files should be produced.

### Discussion

The work product privilege [1] of Fed. R.Civ.P. 26(b)(3), if applicable, protects from discovery "material prepared by or for *any* litigation or trial so long as it was prepared by or for a party to the subsequent litigation." (Emphasis added) *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1988) (citing C. Wright & A. Miller, Federal Practice & Procedure § 202, p. 201 (1970). Therefore, if applicable, it would protect from disclosure the investigation of the accidents that occurred prior to the plaintiff's accident.

The threshold inquiry concerns the applicability of the work product privilege to the facts of this case. The affidavit of Thomas Ihringer states that he is the Product Safety Manager of Melroe. His duties include, among others, the receipt of product accident reports and the routine direction and supervision of investigations regarding those accidents. Melroe's opposition concedes that these reports from whatever source or of whatever type are routinely directed to Mr. Ihringer.

It is readily apparent from these undisputed facts that every accident involving one of its products is routinely investigated by Melroe.

"If . . . a business entity in the ordinary course of its business conducts an investigation for its own purposes, the resulting investigation is (ordinarily) producible in (subsequent) civil pretrial discovery."

*Janiker v. George Washington University*, 94 F.R.D. 648, 650 (D.C.D.C.1982). However, in many instances, and it certain-

---

1. Melroe does nothing more than mention the attorney-client privilege in a letter to plaintiff's counsel and it does not raise or argue why it is applicable to these proceedings, therefore, the Court concludes that it is not applicable and to the extent it was raised in a letter it is deemed abandoned.

ly appears to be so in this case, manufacturers study reports of accidents involving their products for the purpose of ascertaining if preventative measures can be taken to avoid future accidents. In such cases, courts have recognized a privilege of self-critical analysis precluding the discovery of impressions, opinions and evaluations but allowing the discovery of factual data. The reasoning behind this approach is that the ultimate benefit to others from this critical analysis of the product or event far outweighs any benefits from disclosure. Valuable criticism could not be obtained under the threat of potential or possible public exposure for it is not realistic to expect candid expressions of opinion or suggested changes in policies, procedures or processes knowing that such statements or suggestions may very well be used against colleagues and employees in subsequent litigation. 84 A.L.R.4th 15, 24.

In order to warrant disclosure of portions of documents evidencing mental impressions, opinions, theories and recommendations, a moving party must demonstrate substantial need for the materials similar to that required by Fed.R.Civ.P. 26(b)(3) to overcome the qualified immunity from discovery of work product materials. No such showing has been made by the plaintiff in this case. Moreover, the factual materials contained in these reports should be sufficient for the plaintiff's purposes. *Southern Railway Company v. Lanham,* 403 F.2d 119, 133 (5th Cir.1968), *Dollar v. Long Mfg. N.C., Inc.,* 561 F.2d 613, 617 (5th Cir.1977). Accordingly, Melroe shall produce all factual data contained in its seven in-house investigative files, but may redact all mental impressions, opinions, evaluations, recommendations and theories.