522

REICHHOLD CHEMICALS,
INC., Plaintiff,

v.

TEXTRON, INC., Tennessee Gas Pipeline
Co., Archer–Daniels–Midland Co., Ash-
land Oil, Inc., Armstrong World Indus-
tries, Inc., Burlington Northern Rail-
road Co., Quantum Chemical Corp., and
John Does Numbers 1 Through 15, De-
fendants.

ASHLAND OIL, INC., Quantum
Chemical Corp., and Textron,
Inc., Third Party Plaintiffs,

v.

CITY OF PENSACOLA, Third
Party Defendant.

No. 92–30393–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

Sept. 20, 1994.

H. Edward Moore, Jr., Moore Hill & Westmoreland, Pensacola, FL, Lawrence P. Schnapf, Douglas R. Hirsch, William A. Ruskin and Gary T. Grassey, Lord, Day, Lord, Barrett & Smith, New York City, pro hac vice, for Reichhold Chemicals, Inc.

James M. Wilson, Wilson, Harrell & Smith, P.A., Pensacola, FL, Daniel H. Squire, Amey C. Winterer, Wilmer, Cutler & Pickering, Washington, DC, pro hac vice, for Textron, Inc.

William H. Clark, Jr., Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, FL, Richard J. Kissel, Deborah H. Bornstein, Gardner, Carton & Douglas, Chicago, IL, pro hac vice, for Archer-Daniels-Midland Co.

Kendrick Tucker, Huey, Guilday, Kuersteiner & Tucker, Donald L. Tucker, Donald L. Tucker PA, Law Offices, Tallahassee, FL, for Armstrong World Industries, Inc.

James A. Dixon, Jr., Collins & Truett, Tallahassee, FL, Denis V. Brenan, Michael R. Dillon, Deirdre M. Mullen, Sarah E. Davies, Morgan, Lewis & Bockius, Philadelphia, PA, pro hac vice, Stephen Leermakers, Ashland Chemical Co., Div. of Ashland Oil, Inc., Columbus, OH, pro hac vice, for Ashland Oil, Inc.

Robert P. Gaines, Beggs & Lane, Pensacola, FL, for Burlington Northern R. Co.

Keith E. Rounsaville, Keith E. Rounsaville P.A., Tampa, FL, for Quantum Chemical Corp.

Barney J. Chisolm, Jr., State of Florida Dept. of Environmental Regulations, Tallahassee, FL, for amicus curiae State of Florida Dept. of Environmental Regulation.

Kathryn B. Nixon, Ackerman, Senterfitt & Eidson, Orlando, FL, pro hac vice, William H. Farley, Jr., Rebecca L. Raftery, Jenner & Block, Chicago, IL, pro hac vice, for Tenneco, Inc., Tennessee Gas Pipeline Co.

William E. Eddins, Eddins, Allen, Werre & Cooper, Pensacola, FL, John J. Mead, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Arizona Chemical Co.

John Lewis Fiveash, Jr., Fiveash & Associates, Pensacola, FL, for City of Pensacola.

## ORDER

VINSON, District Judge.

Pending is the motion of plaintiff Reichhold Chemicals, Inc. for a protective order exempting certain documents from discovery. (doc. 200). In accordance with the matters discussed at the hearing held on May 3, 1994, these documents have been submitted for *in camera* review.

## I. BACKGROUND

On June 5, 1984, plaintiff Reichhold Chemicals, Inc. ("Reichhold") entered into a Consent Order with the Florida Department of Environmental Regulation obligating it to undertake various measures to investigate and remediate the contamination of groundwater on and under, and storm water runoff from, an industrial plant site it owns in Pensacola, Florida. For over 60 years, various parts of this site have been utilized by many former owners for manufacturing purposes, resulting in a myriad of environmental problems. Reichhold has since taken a number of costly steps to meet its obligation under the consent order.

On October 16, 1992, Reichhold brought this action against eight separate defendants, most of whom are former owners of at least some of the site, to recover its current and anticipated response costs. The fifteen count complaint purports to assert claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") [42 U.S.C. §§ 9607(a), 9613(f) ], claims under various Florida statutes, and claims based on common law causes of action, including indemnification, strict liability, nuisance, negligence, trespass, restitution, and breach of contract.

In March 1993, Reichhold produced approximately 35,000 pages of material in response to discovery requests. Subsequently, Reichhold distributed a privilege log that identified certain documents that had not been produced, which Reichhold asserted were privileged, and the privilege purportedly applicable to each document. Reichhold asserted that thirteen documents were protected from discovery exclusively by the privilege of self-critical analysis.[1] Reichhold has moved for a protective order exempting these documents from discovery. Defendants Textron, Inc.; Ashland Oil, Inc.; Archer–Daniels–Midland Co.; and Quantum Chemical Corp. (collectively "defendants") oppose the motion for a protective order on two grounds. Initially, they note that the privilege of self-critical analysis, also known as the self-evaluative privilege, while adopted in some other jurisdictions, is an issue of first impression in this court, and they urge that I not recognize the privilege. The defendants also assert that, assuming the privilege applies to the federal claims, it is inapplicable to the state law claims.

## II. SELF–CRITICAL ANALYSIS PRIVILEGE

■ The self-critical analysis privilege has been recognized as a qualified privilege which protects from discovery certain critical self-appraisals. It allows individuals or businesses to candidly assess their compliance with regulatory and legal requirements without creating evidence that may be used against them by their opponents in future litigation. The rationale for the doctrine is that such critical self-evaluation fosters the compelling public interest in observance of the law. *See, e.g., Granger v. National R.R. Passenger Corp.,* 116 F.R.D. 507, 508 (E.D.Pa.1987). The privilege protects an organization or individual from the Hobson's choice of aggressively investigating accidents or possible regulatory violations, ascertaining the causes and results, and correcting any violations or dangerous conditions, but thereby creating a self-incriminating record that may be evidence of liability, or deliberately avoiding making a record on the subject (and possibly leaving the public exposed to danger) in order to lessen the risk of civil liability. The self-critical analysis privilege is analogous to, and based on the same public policy considerations as, Rule 407, Federal Rules of Evidence, which excludes evidence of subsequent remedial measures.[2]

1. This total does not include documents which Reichhold asserted were protected by the privilege of self-critical analysis and either attorney-client privilege or work product privilege. It also does not include one document for which the assertion of privilege was withdrawn at the hearing of May 3, 1994.

2. One district court has held that claims of a self-critical analysis privilege should be evaluated under Rule 407. *Capellupo v. FMC Corp.* 46 Fair Empl.Prac.Cas. (BNA) 1193, 1997, 1988 WL 41398 (D.Minn.1988). *See also,* Note, "Making Sense of Rules of Privilege Under the Structural (II) logic of the Federal Rules of Evidence," 105 *Harv.L.Rev.,* 1339 (1992).

The self-critical analysis privilege was apparently first judicially recognized in *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *aff'd without opin.*, 479 F.2d 920 (1973). There, Frank Bredice died in Doctors Hospital on December 11, 1966. Pursuant to accreditation requirements, the hospital held staff meetings in which the professional staff evaluated the care and treatment patients had received. The administratrix of Bredice's estate commenced a medical malpractice action against the hospital, and sought discovery of the minutes of any staff meeting in which Bredice's treatment or death had been discussed.

The *Bredice* opinion noted that such retrospective review of the effectiveness and results of treatments were valuable in improving the quality of health care available to the general public, but that physicians would be unwilling to candidly critique the actions of their colleagues if such evaluations were subject to discovery and use as evidence in a subsequent malpractice action. Moreover, "what someone at a subsequent date thought of these acts or omissions is not relevant to the case." *Bredice*, 50 F.R.D. at 251 (quoting *Richards v. Maine Central R.*, 21 F.R.D. 590 (D.Me.1957)). The self-critical analysis privilege recognized in *Bredice* has been widely adopted in the medical peer review context, and most of the 50 states have statutorily protected medical peer reviews of patient care from discovery. *See, e.g., Sanderson v. Frank S. Bryan, M.D., Ltd.*, 361 Pa.Super. 491, 522 A.2d 1138 n. 3 (1987), *app. denied*, 517 Pa. 624, 538 A.2d 877 (1988) (46 states have statutory privilege); D. Leonard, "Codifying a Privilege of Self-Critical Analysis," 25 *Harv.J. on Legis.* 113, 119–120 (1988) (only Maryland and Oregon lack statutes providing immunity or privilege protection); Comment, "The Medical Review Committee Privilege: A Jurisdictional Survey," 67 *N.C.L.Rev.* 179, 179–80 (1988).

The self-critical analysis privilege has been extended to numerous areas besides medical care: to a defense contractor's confidential assessment of its equal employment opportunity practices [*Banks v. Lockheed–Georgia*

*Co.*, 53 F.R.D. 283 (N.D.Ga.1971)]; to accounting records [*New York Stock Exchange v. Sloan*, 22 Fed.R.Serv.2d (Callaghan) 500 (S.D.N.Y.1980)]; to securities law [*In re Crazy Eddie Securities Litigation*, 792 F.Supp. 197 (E.D.N.Y.1992)]; to academic peer reviews [*Keyes v. Lenoir Rhyne College*, 552 F.2d 579 (4th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)]; to railroad accident investigations [*Granger v. National R.R. Corp.*, 116 F.R.D. 507 (E.D.Pa.1987)]; to product safety assessments [*Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518 (E.D.Tenn.1977)]; and to products liability [*Bradley v. Melroe Co.*, 141 F.R.D. 1 (D.D.C.1992)].

I note also that prior to the *Bredice* decision, the former Fifth Circuit[3] had similarly refused to permit discovery of subjective impressions contained in a defendant railroad's accident reports because, "Absent complete and honest reports, effective accident evaluation may be impaired and the prevention of future accidents hampered." *Southern Railway Co. v. Lanham*, 403 F.2d 119, 131 (5th Cir.1968). The former Fifth Circuit extensively analyzed the competing policy considerations, and held that retrospective investigations of railroad accidents were immune from discovery on public policy grounds. *Southern Railway, supra*, 403 F.2d at 130–33. *See, also, O'Keefe v. Boeing Co.*, 38 F.R.D. 329, 334 (S.D.N.Y.1965); *Richards v. Maine Central Railroad*, 21 F.R.D. 590 (D.Me.1957). Although the former Fifth Circuit did not confer a name upon the immunity from discovery it accorded retrospective accident investigations, I am unable to distinguish it from the self-critical analysis privilege recognized in subsequent years by other courts. Indeed, the *Bredice* opinion itself seems to rely upon the related reasoning of *Richards v. Maine Central Railroad.* 50 F.R.D. at 251.

It is important to note that the self-critical analysis privilege has not been universally acknowledged. The privilege has been denied by some district courts, even in the medical peer review context in which it has achieved widespread acceptance. *See, e.g.,*

3. Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Mao–Shiung Wei v. Bodner,* 127 F.R.D. 91, 100–01 (D.N.J.1989). Some courts have refused to recognize the privilege in an affirmative action context. *See e.g., Witten v. A.H. Smith & Co.,* 100 F.R.D. 446, 449–54 (D.Md. 1984). A few courts and commentators have questioned whether the lack of a privilege really curtails the free flow of critical information within an organization. *See, e.g., Williams v. Vulcan–Hart Corp.,* 136 F.R.D. 457, 459 (W.D.Ky.1991); Note, "Criticizing the Self–Criticism Privilege," 1987 *U.Ill. L.Rev.* 675, 684–85 (1987); J. Flanagan "Rejecting a General Privilege for Self–Critical Analyses," 551 *Geo.Wash.L.Rev.* 551, 582, (1983).

A number of limitations have been placed on the self-critical analysis privilege. Often it has been held that only subjective impressions and opinions, not objective facts, are privileged. *See e.g., Webb v. Westinghouse Elec. Corp.,* 81 F.R.D. 431, 434 (E.D.Pa. 1978). Occasionally, the privilege has been found to be not applicable where the documents have been subpoenaed by a governmental agency as part of an administrative investigation. *See, e.g., Federal Trade Commission v. TRW, Inc.,* 628 F.2d 207, 210 (D.C.Cir.1980). The privilege is usually described as a qualified privilege, which can be overcome by a showing of extraordinary circumstances or special need. *See, e.g., Mao–Shiung Wei v. Bodner,* 127 F.R.D. 91 (D.N.J. 1989); *Bredice v. Doctor's Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd without opin.,* 479 F.2d 920 (1973).

■ Federal courts are empowered to adopt new common law privileges pursuant to Rule 501, Federal Rules of Evidence, on a case by case basis. *University of Pa. v. E.E.O.C.,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571, 582 (1990). However, this power is not to be exercised expansively. *Id.* A court should recognize a privilege when it "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* (quoting *Trammel v. United*

*States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 195 (1980)).

There are sound policy reasons favoring the general adoption of a self-critical analysis privilege. *See,* D. Beck, "Business Litigation," 60 *Def.Couns.J.* 356 (1993); R. Bush, "Stimulating Corporate Self–Regulation—The Corporate Self–Evaluative Privilege: Paradigmatic Preferentialism or Pragmatic Panacea," 87 *Nw.U.L.Rev.* 597, 599 (1993); J. Pelso, "The Privilege for Self–Critical Analysis," 18 *Sec.Reg.L.J.* 699, 722–25 (1990); J. Murphy and R. Oyer, "The Self–Evaluative Privilege and Beyond," 7 No. 3 *Insights* 11 (1993); J. Murphy, "The Self–Evaluative Privilege," 7 *J.Corp.L.,* 489, 491 (1989); D. Leonard, "Codifying a Privilege for Self–Critical Analysis," 25 *Harv.J. on Legis.,* 113 (1988); R. Allen and C. Hazelwood, "Preserving the Confidentiality of Internal Corporate Investigations," 12 *J.Corp.L.* 355 (1987); *but see,* J. Flanagan, "Rejecting a General Privilege for Self–Critical Analyses," 51 *Geo. Wash.L.Rev.* 55 (1983).

■ As applied to the facts of this case, it is self-evident that pollution poses a serious public health risk, and that there is a strong public interest in promoting the voluntary identification and remediation of industrial pollution. The public interest in allowing individuals and corporations to candidly assess their compliance with environmental regulations "promotes sufficiently important interests to outweigh" the interest of opposing private litigants in discovering this potentially highly prejudicial, but minimally relevant, evidence. I view the self-critical analysis privilege as analogous to the rule on subsequent remedial measures, and have no difficulty concluding in the abstract that an entity's retrospective self-assessment of its compliance with environmental regulations should be privileged in appropriate cases.[4]

As discussed earlier, the self-critical analysis privilege has been developed on an ad hoc basis, and the scope of the privilege has varied greatly. The Ninth Circuit has ob-

---

**4.** The defendants contend that no court within the Eleventh Circuit has ever recognized the self-evaluative privilege. This is not entirely correct. The Northern District of Georgia expressly recognized the privilege, citing to *Bredice,* in 1971.

*Banks v. Lockheed–Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971). *Banks* was apparently the first case to expand the privilege beyond the medical peer review field, and has been widely cited.

served that parties asserting the privilege must generally demonstrate that the material satisfies at least three criteria: (1) the information must result from a critical self-analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of a type whose flow would be curtailed if discovery was allowed. *Dowling v. American Hawaii Cruises, Inc.* 971 F.2d 423, 425–26 (9th Cir.1992) (quoting Note, "The Privilege of Self–Critical Analysis," 96 *Harv. L.Rev.*, 1083, 1086 (1983)). The *Dowling* court added a fourth requirement that no document should be privileged unless it was prepared with the expectation that it would be keep confidential, and it has in fact been kept confidential. *Dowling, supra,* 971 F.2d at 426. It also noted the significant difference between pre-accident and post-accident analysis. This distinction is of vital importance, and has been ignored by those who fear that the privilege might be used to prevent discovery of a defendant's prior knowledge of the risks of his actions.

 The fact that an actor had actual prior knowledge of the harm that would or could result from a course of action, and, nevertheless, deliberately chose to act is highly relevant in a negligence action and should ordinarily be discoverable. However, retrospective analysis is generally not relevant. Public knowledge of such analysis, and especially the potential use of such an analysis in litigation, would chill candid self-assessment and the preservation of such self-evaluation records. Therefore, I agree with the reasoning of the *Dowling* opinion, and I adopt the four criteria set out therein in reaching my decision here. I find that the criteria have been met in this case.

The defendants have relied upon *Koppers Company, Inc. v. Aetna Casualty and Surety Co.,* 847 F.Supp. 360 (W.D.Pa.1994). There, the court asserted that "the self-evaluation privilege does not apply *a fortiori* to environmental reports, records, and memoranda." 847 F.Supp. at 364. Moreover, the ruling apparently only applied to pre-occurrence reports. "We doubt that today potential polluters will violate regulations requiring environmental diligence for fear of these documents being used against them tomorrow." 847 F.Supp. at 364. As discussed above, I readily agree that evaluations of the potential environmental risks of a proposed course of action, made in advance of the decision to adopt that course of action, are not protected from discovery. However, retroactive analysis is a very different matter. I disagree with the *Koppers* holding that the self-critical analysis privilege is *a fortiori* inapplicable in all environmental cases. Instead, I conclude that the self-evaluation privilege promotes the interests of justice and should be applied in appropriate environmental cases, just as in other kinds of cases.

In summary, I find that plaintiff Reichhold is entitled to a qualified privilege for retrospective analyses of past conduct, practices, and occurrences, and the resulting environmental consequences. This privilege in this case applies only to reports which were prepared after the fact for the purpose of candid self-evaluation and analysis of the cause and effect of past pollution, and of Reichhold's possible role, as well as other's, in contributing to the pollution at the site. Such reports are privileged only if they were created with the expectation that they would be confidential, and they if have in fact been kept confidential. Moreover, this is a qualified privilege which can be overcome if one or more of the defendants can demonstrate extraordinary circumstances or special need.

### III. STATE LAW CLAIMS

 In addition to the federal claims, the complaint alleges several pendent state law claims under this court's supplemental jurisdiction. Rule 501, Federal Rules of Evidence, provides in pertinent part:

[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Under the plain language of Rule 501, the state law regarding privilege applies in a diversity case. Likewise, in a federal question case, the federal law applies. However,

the rule is silent in a "mixed" case which includes federal and state law claims.

The defendants assert that since the law of Florida does not include a self-critical analysis privilege, then even if the documents in question are privileged for the federal claims, they are discoverable for the state claims. If the defendants' interpretation of Rule 501 is correct, in a case such as this one, in which pendent state law claims are intermixed with federal claims based on the same underlying facts, two separate laws of privilege would apply simultaneously. The defendants could obtain discovery, and use the information to prosecute the state claims, but not the federal claims. Such a result is, of course, "unworkable." *William T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir.1982).

The five circuit courts of appeals which have considered this issue, along with a plethora of trial courts, have uniformly held that in a federal question case with pendent state law claims, the federal law of privileges governs the entire case. *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir.1992); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir.1992); *Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir.1987); *William T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir.1982); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). While the language of Rule 501 admittedly is susceptible to the interpretation advanced by the defendants, the defendants have not cited, nor have I discovered, any reported case which has interpreted Rule 501 in that way.[5]

I note also that even if the defendants were correct, it is far from certain that Florida law would require the production of such documents. As all parties correctly note, Florida courts are forbidden from adopting new privileges by judicial decision. *Southern Bell Telephone and Telegraph Co. v. Beard*, 597 So.2d 873, 876 n. 4 (Fla. 1st D.C.A.1992). However, Florida courts have consistently held that the *Bredice* decision which created the self-critical analysis privilege has been adopted in the common law of Florida, not as a rule of privilege, but as a discretionary right of a court on grounds of public policy. *See, HCA of Florida, Inc. v. Cooper*, 475 So.2d 719, 720 (Fla. 1st D.C.A.1985); *Segal v. Roberts*, 380 So.2d 1049 (Fla. 4th D.C.A. 1979), *cert. denied*, 388 So.2d 1117 (Fla.1980); *Dade County Medical Assoc. v. Hlis*, 372 So.2d 117, 121 (Fla.3d D.C.A.1979). If public policy favors the confidentiality of documents to preserve the free flow of information, the party seeking disclosure must show "exceptional necessity" or "extraordinary circumstances" before a court will order production. *HCA of Florida v. Cooper, supra*, 475 So.2d at 720.

## IV. CONCLUSION

I have conducted an in camera examination of all the documents which Reichhold asserts are protected from discovery solely by the privilege of self-critical analysis. Based on the considerations set forth above, I have determined that documents 6, 8, 10, 11, 12, and 13 are within the scope of the privilege. The motion for protective order is GRANTED for these documents only; otherwise, it is DENIED.

DONE AND ORDERED.

---

5. The legislative history also supports this interpretation of the rule. "[I]n nondiversity jurisdiction civil cases, federal privilege law will generally apply." H.R.Rep. No. 1597, 93d Cong., 2d Sess. 7 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7101.