**UNITED STATES ex rel. Roger L. SANDERS, et al., Plaintiffs,**

v.

**ALLISON ENGINE COMPANY, INC., et al., Defendants.**

No. C–1–95–970.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 18, 2000.

## ORDER

HOGAN, United States Magistrate Judge.

This matter has been referred to this court by the District Court (Doc. 91) on plaintiff, relators, Roger L. Sanders and Roger L. Thacker's (Relators) motion to compel production of documents (Doc. 78), defendant Southern Ohio Fabricators, Inc.'s (SOFCO) memorandum in opposition to motion to compel (Doc. 79), relator's reply to response to motion to compel (Doc. 82), defendant's response/surreply to motion to compel (Doc. 83) and relator's reply to response/surreply to motion to compel (Doc. 86).

Parties are entitled to discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The information sought need not be admissible at trial, only reasonably calculated to lead to the discovery of admissible evidence. See Fed. R.Civ.P. 26(b)(1).

Relators move this Court for an order compelling defendant SOFCO to produce documents relating to audits of SOFCO's fabrication of base and enclosure assemblies for generator sets (Gen–Sets) that are installed in United States Navy Arleigh Burke class destroyers. (Doc. 78). Relators claim that the documents requested evidence SOFCO's non-compliance with its contractual obligations and as such are directly relevant to the Relator's allegations. *Id.* Under Rule 26(b)(5), a party claiming a privilege on otherwise discoverable information must make the claim expressly and describe the nature of the document in order to enable the other party to assess the applicability of the privilege. See Fed.R.Civ.P. 26(b)(5).

Defendant SOFCO responds by claiming that these documents are internal, self-critical materials which are protected as privileged under the self-critical analysis/self-evaluative privilege. (Doc. 79). SOFCO defines these documents as internal audits conducted by SOFCO in order to assess quality control

deficiencies and problems, and to suggest improvements so that any deficiencies could be remedied and to improve the overall quality of SOFCO's work. (Doc. 79 & Ex. A, Affidavit of Timothy J. Gates). SOFCO has identified fourteen documents protected by this privilege.[1] (Doc. 78, Ex. B.).

SOFCO relies mainly on two cases to support its claim that a self-critical analysis privilege exists in the Sixth Circuit. *See Hickman v. Whirlpool Corp.,* 186 F.R.D. 362 (N.D.Ohio 1999) and *Urseth v. City of Dayton,* 653 F.Supp. 1057 (S.D.Ohio 1986). In *Hickman,* plaintiff requested Safety Team Minutes regarding an accident where the plaintiff was injured while operating machinery at the defendant's plant. 186 F.R.D. at 363. The court felt that even though the Sixth Circuit had not addressed the issue it would adopt the self-critical analysis privilege. *See id.* In *Urseth,* plaintiff sought reports from the Dayton Police Department's internal meetings regarding a fatal shooting by the police department. 653 F.Supp. at 1059. The court, while declining to allow the privilege on the facts of the case, found that generally such reports should not be discoverable due to the important function that they serve. *See id.* at 1061, 1063.

The origination of the self-critical analysis privilege (sometimes referred to as the self-evaluative privilege) is widely considered to be from the case of *Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249 (D.D.C.1970). *See Hickman,* 186 F.R.D. at 363; *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423 (9th Cir.1992). In *Bredice,* a medical malpractice suit, the plaintiff moved for discovery of medical review board meeting minutes and reports. 50 F.R.D. at 249. The court ruled that "[c]onfidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients." *Id.* at 250. Subjecting the discussions and deliberations to the discovery process, without a showing of exceptional need, would effectively terminate any further deliberations. *Id.* The *Bredice* court felt that

constructive professional criticism would not occur out of fear that one doctor's critique of another could be used in a malpractice suit against that colleague. *Id.*

The test which has evolved from the *Bredice* decision, and the one which SOFCO advocates, is a four part test: (1) the information must result from self-critical analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of the type whose flow would be curtailed if discovery were allowed, and; (4) no document should be accorded the privilege unless it was prepared with the expectation that it would be kept confidential. *See Hickman,* 186 F.R.D. at 363 (citing *Dowling,* 971 F.2d at 426).

■■■ Privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The assertion of privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (quoting *Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). "[T]he allowance of the privilege to withhold evidence that is demonstrably relevant in a ... trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." *Nixon,* 418 U.S. at 712, 94 S.Ct. 3090.

The *Hickman* court felt that the Sixth Circuit would adopt the "self-critical analysis" privilege if it were confronted with the issue. *See Hickman,* 186 F.R.D. at 363. The *Urseth* court agreed that the City of Dayton was entitled to assert such a privilege in trying to protect internal committee meeting reports regarding a police shooting.

---

1. The original Privilege Log lists 19 such entries. However, after re-evaluation of the documents five were deemed not to fall under the privilege and were produced to Relators. (Doc. 78, Ex. F.,G.)

*See Urseth,* 653 F.Supp. at 1061. Widespread agreement on such a privilege is far from settled, however. In one recent case, the court admits that the self-critical analysis privilege is relatively unestablished and *assumes* that federal common law recognizes the privilege. *See Tice v. American Airlines, Inc.,* 192 F.R.D. 270, 272 (N.D.Ill.2000). Courts have also found other grounds for limiting discovery outside of the self-critical analysis privilege. "The Supreme Court and the circuit courts have neither definitively denied the existence of such a privilege, nor accepted it.... Rather, when confronted with a claim of the privilege they have refused on narrow grounds to apply it to the facts before them." *Dowling,* 971 F.2d at 425 n. 1 (citing *University of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Memorial Hosp. v. Shadur,* 664 F.2d 1058 (7th Cir.1981); *Federal Trade Commission v. TRW, Inc.,* 628 F.2d 207 (D.C.Cir.1980); *United States v. Noall,* 587 F.2d 123 (2nd Cir.1978)). *See also Hickman,* 186 F.R.D. at 363 ("[T]he documents submitted are general in nature, and offer ... a remote possibility of leading to discoverable, let alone admissible evidence."); *Tice,* 192 F.R.D. at 273 ("[T]he Court finds that the information contained in the Safety Reports is irrelevant.").

Most often, the self-critical analysis privilege has been used in the context of after action reports. *See Bredice,* 50 F.R.D. 249 (medical malpractice); *Hickman,* 186 F.R.D. 362 (industrial accident); *Urseth,* 653 F.Supp. 1057 (police shooting). However, internal evaluations done in the normal course of business have not been afforded the same protection. The *Dowling* court found that the self-critical analysis privilege did not protect routine internal corporate reviews. *See Dowling,* 971 F.2d at 426. In *Reichhold Chemicals, Inc. v. Textron, Inc.,* the court determined that the privilege only applies to reports which were prepared after the fact for the purpose of self evaluation and analysis. 157 F.R.D. 522, 527 (N.D.Fla.1994). The "fact that an actor had actual prior knowledge of the harm that would or could result from a course of action, and, nevertheless, deliberately chose to act is highly rele-

vant ... and should ordinarily be discoverable." *Id.*

Even if the privilege does exist, the justifications for it do not support its application to voluntary, routine reviews. *See Dowling,* 971 F.2d at 426. The *Dowling* court reasoned that routine reviews done in the normal course of business are generally designed to preempt litigation. *See id.* at 427. The court further emphasized that the difference between pre-incident and post-incident reviews was that candid assessments would not be stifled by the fear of their use in the hypothetical litigation the reviews were designed to prevent. *See id.* The *Urseth* court recognized this difference between pre- and post-incident reviews as well when it noted that in *Bredice* the meetings did not concern themselves with patients who were currently in the hospital, but were in the nature of a retrospective review of certain procedures which had been performed by staff members. *See Urseth,* 653 F.Supp. at 1060. Another court found that the documents must have been created specifically for an outside reviewing agency in order to be privileged. *See Shipes v. BIC Corp.,* 154 F.R.D. 301, 307 (M.D.Ga.1994) (the Consumer Products Safety Commission).

The rationale of the privilege has even been called into doubt. *See Troupin v. Metropolitan Life Ins. Co.,* 169 F.R.D. 546, 549 (S.D.N.Y.1996). The court in *Roberts v. Hunt,* found that the Supreme Court in *University of Pennsylvania,* by "rejecting a 'peer review' privilege implicitly rejected the rationale for a self-evaluation privilege." 187 F.R.D. 71, 75 (W.D.N.Y.1999).

The Supreme Court has been "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *University of Pennsylvania,* 493 U.S. at 189, 110 S.Ct. 577. In *United States v. Southern Bell Tel. & Tel. Co.,* another *qui tam* False Claims Act case, the court addressed whether Congress had considered the "relevant competing concerns" at issue in a False Claims Act action to determine whether the privilege should be allowed. 915 F.Supp. 308, 311 (N.D.Fla.1996) (citing *University of*

*Pennsylvania,* 493 U.S. at 189, 110 S.Ct. 577). The court, quoting extensively from the congressional record, determined that Congress had provided its own version of the self-critical analysis privilege. *See id.* at 312–13. It concluded that, under 31 U.S.C. § 3729(a)(1–7)(A–C) and 3729(d), "a self-critical analysis privilege *does not exist* in a *qui tam* action brought under the False Claims Act." *Id.* at 313 (emphasis added).

 If the privilege would be adopted by the Sixth Circuit, SOFCO must then meet all four elements of the test set forth above (see supra p. 312). The documents in dispute are obviously self-critical analysis done by SOF-CO. And the public does have an interest in companies continually trying to improve their production and efficiency. However, there is also a strong public interest in having government contractors meet their contractual obligations.

Courts, with apparent uniformity, have refused to apply the privilege where the documents in question have been sought by a governmental agency. *See TRW, Inc.,* 628 F.2d at 210 (citing *Emerson Elec. Co. v. Schlesinger,* 609 F.2d 898 (8th Cir.1979); *United States v. Noall,* 587 F.2d 123 (2nd Cir.1978); *Reynolds Metals Co. v. Rumsfeld,* 564 F.2d 663 (4th Cir.1977)). The Fifth Circuit has declined to recognize the privilege where the government sought pre-accident documents. *See In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586 (5th Cir.2000). Since the privilege is based on the public interest in the free flow of information, and there is also strong public interest in allowing governmental investigations to proceed efficiently and expeditiously, this conclusion makes sense. *See TRW, Inc.,* 628 F.2d at 210.

The third prong of the test is also a close case. Would disclosure of this information curtail any future quality control audits by SOFCO? SOFCO contends that companies would be hesitant to document problem areas for improvement out of fear that this documentation would be used against them in later litigation. Courts have tread gingerly in this area, however. In *Tice,* the court, while allowing the privilege, admitted that it would be bad for business, and therefore

unlikely, for companies to abandon safety reviews or to stop making improvements. *See Tice,* 192 F.R.D. at 273. In addition, this documentation may form an affirmative defense to a claim, so companies would be more inclined, rather than disinclined, to perform self-critical analysis in order to protect themselves in future litigation. *See Williams v. Vulcan–Hart Corp.,* 136 F.R.D. 457, 459 (W.D.Ky.1991).

SOFCO fails to meet the fourth part of the test as well. The documents must have been created with the expectation that they remain confidential, and in fact have remained confidential. *See Dowling,* 971 F.2d at 426. SOFCO asserts that the audit documents were created with the expectation that they would remain confidential. Additionally defendants claim that they had no obligation to share these documents with anyone outside of SOFCO. However, the Procurement Document Quality Requirement from defendant, General Tool Co. (GTC), requires that SOF-CO "maintain records of inspection performed and results obtained. The records shall be made available to GTC upon request." (Doc. 82, Ex. J.). The same document also requires that the supplier take prompt action to correct causes of product nonconformance, no matter who determines that the product does not comply with the specifications. *See id.* All records of nonconformance and corrective action are to be maintained by the supplier for seven years and made available to GTC upon request. *See id.*

SOFCO states that these documents do not imply a duty to perform any "internal audits" or to make them available to outside sources. SOFCO is correct that these documents do not impose a duty to perform audits on their quality control process or to do any further inspections than those required by the contract and which they have already performed and turned over to Relators. But by going further and conducting their own quality assurance audits, SOFCO opened the door to allow GTC to request those records as well. The Procurement Document Quality Requirement, Section 8.0, clearly requires SOFCO to document the corrective action taken for nonconformance and make those

records available to GTC upon request, no matter who discovers the noncompliance. (Doc. 82, Ex. J.). SOFCO cannot maintain that these internal audits were created with the expectation that they remain confidential when GTC could request documentation of SOFCO's corrective action at any time. Accordingly, these documents cannot be said to have been created with the expectation that they would remain confidential.

■ Finally, even if the these documents meet all four requirements of the self-critical analysis privilege, this does not allow SOFCO to protect everything that is in the documents. The privilege is not absolute. It applies only to analysis or evaluation, not the facts on which evaluation is based. *See In re: Crazy Eddie Securities Litigation,* 792 F.Supp. 197, 205 (E.D.N.Y.1992). Courts have protected analytical or evaluative information but allowed discovery of factual information. *See Troupin,* 169 F.R.D. at 550. Under the privilege, parties are not required to reveal self-critical analyses, but must produce data or statistical information. *See Roberts v. National Detroit Corp.,* 87 F.R.D. 30, 32 (E.D.Mich.1980). Information, documents or records otherwise available from other sources are not immune from discovery. *See Shipes,* 154 F.R.D. at 307 (citing *Hollowell v. Jove,* 247 Ga. 678, 279 S.E.2d 430, 434 (1981)).

■ Additionally, this is a qualified privilege and it can be overcome by showing extraordinary circumstances or special need. *See Reichhold Chem. Inc.,* 157 F.R.D. at 527. The privilege must be balanced against the opposing party's need for discovery. *See In re: Crazy Eddie Securities Litigation,* 792 F.Supp. at 205. Nevertheless, because the privilege is denied on other grounds, the court declines to address whether Relators have shown the requisite need to overcome the privilege.

**IT IS THEREFORE ORDERED THAT:**

Relator's motion to compel discovery of Defendant SOFCO's internal audit documents (Doc. 78) is **GRANTED.**