DECISION
Before this Court is Plaintiffs', Barbara Brokaw, Raymond Mutz, Tammy Oakley, and Delza Young, (Plaintiffs) Rule 37 motion to compel Defendants C.R. Bard, Inc. and Davol Inc. (collectively "Defendant") to produce a confidential audit report of their quality systems conducted by an outside consultant. At issue is whether Defendant may assert a previously unknown privilege — the self-critical analysis privilege — to protect confidential self-evaluations of this type from discovery.
In this Kugel Hernia Patch litigation matter, Plaintiffs have demanded production of 177 documents contained in Defendant's privilege log. Among the privileges listed in this log is the so-called self-critical analysis privilege. Plaintiffs seek a declaration from the Court that the self-critical analysis privilege raised by Defendants is not a valid basis under Rhode Island law for asserting a privilege and, therefore, it must be removed from all documents being withheld. For purposes of document production, Plaintiffs have not challenged Defendant's assertion that while the self-critical analysis privilege has been raised with respect to many of the documents sought, all but one is independently *Page 2 
protected under the work product doctrine. The confidential audit report referenced above is the sole document for which the self-critical analysis privilege is the only privileged claimed. Plaintiffs, therefore, seek production of that document only.
Defendant, for its part, urges the Court to adopt the self-critical analysis privilege. It argues that while the privilege has heretofore never been recognized by courts in Rhode Island, there is a strong public interest in encouraging companies to conduct voluntary quality audits that is chilled by disclosure to hostile parties in litigation. Defendant also argues that if the Court were to recognize the self-critical analysis privilege, the document in question would clearly be protected from discovery under the four-part test[1] enunciated inHickman v. Whirlpool Corp., 186 F.R.D. 362, 363 (N.D. Ohio 1999) (citingDowling v. American Hawaii Cruises, Inc., 971 F.2d 423, 426
(9th Cir. 1992)).
Rule 26(b) of the Rhode Island Rules of Civil Procedure establishes the scope and limits of discovery. It provides in pertinent part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." While the scope of discovery is extremely broad, the rules explicitly exempt privileged matter. See Robert B. Kent et al.,Rhode Island Civil and Appellate Procedure § 26:7. The most common evidentiary privileges are those between attorney and client, husband and wife, priest and penitent, and the privilege against self-incrimination. Id. Rule 26(b)(3) also establishes a qualified privilege for attorney's work product and an absolute privilege for attorney's mental impressions. Kent § 26:5.
Consistent with the liberal discovery policy underlying Rule 26 is the view that *Page 3 
privileges are not favored. See Gaumond v. Trinity RepertoryCompany, 909 A.2d 512, 519 (R.I. 2006) ("`immunity from discovery is in derogation of both common-law and the general policy favoring discovery,' as such, we do not easily embrace the creation of new privileges.") (quoting Moretti v. Lowe, M.D., 592 A.2d 855, 857 (R.I. 1991)). As such, the party who asserts a privilege has the burden of establishing entitlement to it. Id. Furthermore, the source of newly created privileges has "shifted decisively from the courts to the legislatures." McCormick on Evidence § 75 at 352 (6th ed. 2006). With the exception of the development of privileges in federal courts under Fed.R.Evid. 501, the development of judge-made privileges "virtually halted over a century ago." Id.
The self-critical analysis privilege has its origin in Bredice v.Doctor's Hospital, Inc., 50 F.R.D. 249 (D.D.C. 1970). There, a plaintiff in a medical malpractice suit sought discovery of the minutes of a hospital staff meeting in which plaintiff's decedent's treatment and death had been discussed. The court held that the minutes and reports of the hospital's staff were not subject to discovery and were entitled to qualified privilege due to the overwhelming public interest in having staff meetings held confidential so that the free flow of ideas and advice valuable to improving health care could continue unimpeded.Id. at 251. Following the Bredice decision, the self-critical analysis privilege was widely adopted in the context of medical peer review boards and most states, including Rhode Island, have protected them from discovery by statute. See G.L. 1956 § 23-17-25; Moretti v. Lowe,M.D., 592 A.2d 855, 857 (R.I. 1991) (the policy behind protecting medical peer review boards is to encourage "open discussions and candid self-analysis . . . to ensure that medical care of high quality will be available to the *Page 4 
public"); Reichhold Chemicals, Inc. v. Textron, Inc., 157 F.R.D. 522,525 (N.D. Fla. 1994) (46 states have statutory privilege).
The self-critical analysis privilege has occasionally been extended to areas beyond medical care, including product safety assessments and products liability. Reichold Chemicals, 157 F.R.D. at 525. (citingLloyd v. Cessna Aircraft Co., 74 F.R.D. 518 (E.D. Tenn. 1977);Bradley v. Melrose Co., 141 F.R.D. 1 (D.D.C. 1992)). A great many courts, however, have refused to recognize the privilege. See,e.g., Spencer Savings Bank, SLA v. Excell Mortgage Corp.,960 F. Supp. 835 (D.N.J. 1997) (refusing to recognize self-critical analysis privilege under federal common law); Jolly v. Superior Court,540 P.2d 658, 662-63 (Ariz. 1975) (refusing to extend privilege to internal safety investigation report of company); see also Donald P. Vandergrift,The Privilege of Self-Critical Analysis: A Survey of the Law, 60 Alb. L. Rev. 171, 180 ("Although the privilege has been accepted by several courts in various contexts, a greater number of courts have defeated efforts to assert the privilege and bar self-critical analyses from disclosure.") Overall, where recognized by courts, the privilege "allows individuals or businesses to candidly assess their compliance with regulatory and legal requirements without creating evidence that may be used against them by their opponents in future litigation. The rational for the doctrine is that such critical self-evaluation fosters the compelling public interest in observance of the law." ReicholdChemicals, 157 F.R.D. at 524. While Rhode Island provides statutory protection for medical peer review boards, no court in this state has yet recognized the self-critical analysis privilege in any other context. Section 23-17-25. *Page 5 
Moreover, our Supreme Court has recently declared that it does not "easily embrace the creation of new privileges." Gaumond,909 A.2d at 519. In Gaumond, the Court declined to recognize a new "school-disabled student privilege" and clearly stated its view on the creation of heretofore unknown privileges:
 "This Court consistently has declared that privileges, in general, are not favored in the law and therefore should be strictly construed. Mindful that the primary function of the judicial process indisputably is truth-seeking, we have declared that privileges do not aid the quest for truth, the core function of the adversary process. Privileges, by their nature, create limitations on the legal process that must be viewed with skepticism because they attempt to shut out the light on the ascertainment of the truth.
 When a party who is resisting discovery of so called confidential or protected information asserts a privilege, the burden of establishing entitlement to nondisclosure rests on the party resisting discovery. This Court has refused to recognize new privileges, even when a statute manifests and effectuates an important legislative policy favoring confidentiality and generally prohibits disclosure of information." Id. at 516-17 (internal citations and quotations omitted).
Here, Defendant is asking the Court to recognize a new privilege, not based upon a statute manifesting a policy favoring confidentiality or generally prohibiting disclosure of certain business records, but essentially from whole cloth. Our Supreme Court's reluctance to recognize such privileges is well-settled.
In addition, the Court is persuaded that the adoption of a self-critical analysis privilege would run counter to the policies underlying Rhode Island Rule of Evidence 407 regarding subsequent remedial measures. Rhode Island Rule 407 departs significantly from the previous version of the rule and its federal counterpart in making *Page 6 
evidence of subsequent remedial measures admissible at trial.[2]
During argument, Defendant attempted to distinguish self-critical analysis from a Rule 407 subsequent remedial measure by pointing out that the former pertains to the content of a company's self-investigation, while the latter pertains to changes made to a product. The Court does not find this to be a significant distinction. In fact, one of the principal cases relied upon by Defendant in its brief clearly states that the self-critical analysis privilege is "analogous to, and based on the same public policy considerations as, Rule 407, Federal Rules of Evidence, which excludes evidence of subsequent remedial measures." Reichold Chemicals, 157 F.R.D. at 524. According to the committee note, the ground for exclusion under FRE 407
"rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed.R.Evid. 407. However, Rhode Island has rejected this policy underlying FRE 407 when it adopted its own version based upon Maine Rule of Evidence 407(a). The Advisory Committee's note to the new Rhode Island Rule of Evidence 407 clearly states: "the public policy behind the rule against admissibility was that it would deter repairs. This rationale is unpersuasive today." The Committee further stated:
 "Moreover, it is doubtful that the traditional rule affects primary behavior in either case [negligence or strict liability] where the defendant is a large manufacturer or that the individual defendant even knows about the rule. In *Page 7 
the rare case where it would be unfair or misleading to admit evidence of subsequent remedial measures, Rule 403 gives the trial judge discretion to exclude it" Id.
Defendant's argument, therefore, that disclosure of self-evaluative analyses may deter businesses from conducting similar candid reviews in the future is in clear conflict with the public policy favoring liberal discovery expressed in Rhode Island Rule 407.
Accordingly, Defendant has not met its burden of showing a compelling public policy interest in protecting self-evaluative reports from discovery. The Court, therefore, declines to recognize the self-critical analysis privilege as a valid privilege under Rhode Island law. Given the ruling on recognition of the privilege, the Court finds it unnecessary to address whether the document would be protected from discovery under the four-part test found in the Hickman case. Plaintiff's Rule 37 motion to compel production of the confidential audit report, KPRE009122-9124, is hereby granted. Counsel shall prepare an appropriate order for entry.
[1] 1) The information must result from self-critical analysis undertaken by the party seeking protection; 2) the public must have a strong interest in preserving the free flow of the type of information sought; 3) the information must be of the type whose flow would be curtailed if discovery were allowed; and 4) no document should be accorded the privilege unless it was prepared with the expectation that it would be kept confidential.
[2] Compare R.I.R. Evid. 407 ("When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is admissible."),with Fed.R.Evid. 407 ("When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.").
 *Page 1